IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Plunderbund Media, L.L.C., et al., | Case No. 1:17-cv-_____ |
| Plaintiffs, | |
| – vs – | Judge |
| Mike Dewine, Sued in His Official Capacity as Ohio Secretary of State, et al., | |
| Defendants. | Magistrate Judge |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION

EUGENE VOLOKH *
California Bar No. 194464
SCOTT & CYAN BANISTER
  FIRST AMENDMENT CLINIC
UCLA School of Law
405 Hilgard Avenue
Los Angeles, California 90095
Telephone (310) 206-3926
volokh@law.ucla.edu

*Application for Admission
  Pro Hac Vice Pending

RAYMOND V. VASVARI, JR.
Ohio Bar No. 0055538
VASVARI | ZIMMERMAN
1301 East Ninth Street
1100 Erieview Tower
Cleveland, Ohio 44114-1854
Telephone | 216.458.5880
Email | vasvari@vasvarilaw.com
Telecopier | 216.928.0016

Counsel for the Plaintiffs [†]

[†]Counsel would like to thank Ashford Kneitel, Ryan Nielsen, and Elizabeth Sweeney, UCLA School of Law students who worked on this brief.

– TABLE OF CONTENTS –

Table of Contents ..................................................................................................... ii

Table of Authorities ................................................................................................ iii

Introduction ............................................................................................................. 1

The Plaintiffs ........................................................................................................... 2

Law & Argument .................................................................................................... 5

    A.  Plaintiffs likely will succeed in establishing that § 2917.21(B)(2)
        Violates the First Amendment ........................................................... 5

        1.  Section 2917.21(B)(2) is an alarmingly broad speech restriction ................. 6

        2.  Section 2917.21(B)(2) is not saved by the requirement of bad purpose ....... 9

        3.  Section 2917.21(B)(2) Restricts Protected Speech Based On Its Content,
            And Must Be Judged Under Strict Scrutiny, Which It Cannot Pass ........... 10

        4.  The Recent Enactment of Section 2917.21(B)(2) Presents a Sufficiently
            Realistic Prospect of Enforcement to Confer Standing on the Plaintiffs and
            Make This Case Ripe for Review ............................................................. 12

    B  Plaintiffs Will Suffer Irreparable Harm Without A Preliminary
       Injunction ........................................................................................ 14

    C.  Granting The Injunction Will Not Harm Third Parties ........................................... 15

    D.  A Preliminary Injunction Is In The Public Interest .................................................... 15

    E.  The Court Can and Should Dispense with Bond ...................................................... 16

Conclusion ............................................................................................................ 16

Exhibits ............................................................... Submitted Herewith via ECF

    1.  Declaration of Tom Zawistowski ................................................ Attached as ECF Ex. 1

    2.  Declaration of Joseph Mismas .................................................... Attached as ECF Ex. 1

    3.  Declaration of John Michael Spinelli ........................................ Attached as ECF Ex. 1

Service ..............................................................................................................

– TABLE OF AUTHORITIES –

- CASES –

*281 Care Comm. v. Arneson*, 638 F.3d 621 (8th Cir. 2011) ..................................................... 13

*Adult Video Ass'n v. U.S. Dep't of Justice*,
  853 F. Supp. 263 (W.D. Tenn. 1994) ................................................................. 13

*Am. Freedom Def. Initiative v. Suburban Mobility for*
  *Reg'l Transp.*, 698 F.3d 885 (6th Cir. 2012) ....................................................... 15

*Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012) ................................................. 13, 14

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) ......................................... 11

*Bookfriends, Inc. v. Taft*, 223 F. Supp. 2d 932 (S.D. Ohio 2002) ....................... 12, 13

*Boos v. Barry*, 485 U.S. 312 (1988) ................................................................. 10, 11

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) .............................................................

*Carey v. Wolnitzek*, 614 F.3d 189 (2010) ........................................................... 13

*Certified Restoration Dry Cleaning Network, L.L.C. v.*
  *Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007)............................................................. 5

*City of Pontiac Retired Employees Ass'n v. Schimmel*,
  751 F.3d 427 (6th Cir. 2014) ........................................................................... 5

*Connection Distributing Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998)..................... 5, 15

*Dayton Area Visually Impaired Persons, Inc. v. Fisher*,
  70 F.3d 1474  (6th Cir. 1995) ....................................................................... 15

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*,
  274 F.3d 377 (6th Cir. 2001) ...........................................................................

*Doe v. Bolton*, 410 U.S. 179 (1973) ................................................................. 12

*Elrod v. Burns*, 427 U.S. 347 (1976) ................................................................. 14

*FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449 (2007) ........................................... 9, 10

*Frisby v. Schultz*, 487 U.S. 474 (1988) ............................................................... 7

– TABLE OF AUTHORITIES –
- CASES CONTINUED –

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,*
  23 F.3d 1071  (6th Cir. 1994) ................................................................15

*Garrison v. Louisiana*, 379 U.S. 64 (1964) ...............................................9

*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) ......................................9

*J.L. Spoons, Inc. v. Morckel,* 314 F. Supp. 2d 746  (N.D. Ohio 2004)......................15

*Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558 (6th Cir. 1982) .....................15

*McKay v. Federspiel*, 823 F.3d 862  (6th Cir. 2016) ........................................13, 14

*Moltan Co. v. Eagle Pitcher Industries, Inc.,*
  55 F.3d 1171 (6th Cir. 1995) ...............................................................16

*N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999) ............................14

*N.H. Right to Life Political Action Comm.*, 99 F.3d 8 (D.N.H. 1996) ........................12, 13, 14

*Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989)..........................................14

*Ohio State Conf. of NAACP v. Husted,*
  768 F.3d 524 (6th Cir. 2014) ...............................................................5

*Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971) .............................7

*Poe v. Ullman*, 367 U.S. 497  (1961) .....................................................12

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) ...........................................10, 11

*Roth v. Bank of the Commonwealth*, 583 F.2d 527 (6th Cir. 1978) .........................16

*Rowan v. U.S. Post Office Dep't*, 397 U.S. 728 (1970)...................................7

*St. Paul Area Chamber of Commerce v. Gaertner,*
  439 F.3d 481 (8th Cir. 2006) ...............................................................13

*Snyder v. Phelps,* 562 U.S. 443 (2011) ..................................................9

*Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013) .........................................5

*State v. Bishop*, 787 S.E.2d 814 (N.C. 2016)..............................................11

– TABLE OF AUTHORITIES –
- CASES CONTINUED –

*State v. Dart*, No. 23955, 2010 WL 4703406
    (Ohio Ct. App. Nov. 19, 2010) ................................................. 6

*State v. Dennis*, No. 1-97-42, 1997 WL 691448
    (Ohio Ct. App. Oct. 30, 1997) ................................................ 6

*Texas v. Johnson*, 491 U.S. 397 (1989) ................................. 11

*Ohio State Conf. of NAACP v. Husted*, 768 F.3d 524 (6th Cir. 2014) ....................................... 5

*United States v. Stevens*, 130 S. Ct. 1577 (2010) ....................... 8

*Unbane v. Knapp Bros. Mfg. Co.*, 217 F.2d 810  (6th Cir. 1954) .......................... 16

*Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383 (1988)  ................................. 12, 14

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ................................. 11

*Winter v. Wolnitzek*, 834 F.3d 681 (6th Cir. 2016) ....................... 12

*Wright v. City of Cincinnati*, 450 F.Supp.2d 831 (S.D.Ohio 2005) ........................................ 16

- STATUTES –

OHIO REV. CODE § 2903.211 ....................................................... 7

OHIO REV. CODE § 2913.01(X) ..................................................... 7

OHIO REV. CODE § 2917.21(A)(5) ................................................ 7

OHIO REV. CODE § 2917.21 (B)(1) ............................................... 1

OHIO REV. CODE § 2917.21 (B)(2) ........................................... *passim*

OHIO REV. CODE § 2917.21 (F) ........................................... 1, 4, 6, 8

- CONSTITUTIONAL PROVISIONS –

U.S. CONST. AMEND.  I ........................................... *passim*

- RULES –

FED.R.CIV.P 65(C) ........................................... 16

– I**NTRODUCTION** –

As of August 15, 2016, it is a crime for Ohioans (except the media) to say anything online if a jury finds that their purpose is to "abus[e]" or "harass[]" another person. *See* Ohio Rev. Code § 2917.21(B)(2) (criminalizing "knowingly post[ing] a text or audio statement or an image" online "for the purpose of abusing, threatening, or harassing another person"); *id.* §2917.21(F) (exempting the media).

Yet the First Amendment protects even speech intended to insult or motivated by hostility—both because that speech is itself constitutionally valuable, and because restricting such speech unduly chills even well-motivated speech.

Section 2917.21(B)(2) ("the statute") therefore violates the First Amendment. Plaintiffs ask this Court to find the prohibition on speech posted online "for the purpose of abusing . . . or harassing" to be facially overbroad, and to issue a preliminary injunction – and ultimately, after a hearing, a declaratory judgment and permanent injunction – barring its enforcement. Plaintiffs do not object to the prohibition on "threatening" speech, if that is limited to true threats of illegal conduct, and if that prohibition can be severed from the unconstitutional prohibitions on speech said "for the purpose of abusing . . . or harassing."[1]

---

[1] Revised Code Section 2917.21(B)(1) contains similar language, and provides:

> No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person.

To the extent that this section prohibits using, or allowing another to use a communications device to engage in the sort of online expression as is prohibited in Section 2917.21(B)(2), the Plaintiffs challenge its restrictions on abusive and harassing (but not threatening) speech for the same reasons and on the same bases as they contest the validity of Section 2917.21 (B)(1).

## – THE PLAINTIFFS –

Plaintiffs, their writers and their members routinely publish online political commentary, reporting and opinion which from time-to-time is harshly critical of various politicians, candidates for, and incumbents in public office, and thus legitimately fear prosecution under the statute.

Their online writings are in the best traditions of independent American political discourse, and are intended both to raise the awareness of other citizens regarding political matters, and to hold politicians accountable to the public through pointed criticism. This sort of expression is at the very heart of political speech which the First Amendment most closely protects.

The Portage County TEA Party ("PCTP") is an organization of like-minded people who encourage all citizens "monitor the actions of government to make sure it is consistent with the Ohio and Federal Constitutions, and to challenge and even change government when government takes actions to the contrary."[2] The PCTP publishes political opinions online, including opinions that are highly critical of government officials and other political parties. It has accused the Ohio Republican Party, for example, of operating as a money-laundering operation, and employing Mafia-like tactics to control elections and raise money. These criticisms have included former Ohio Republican Chairman Matt Borges and sitting Governor John Kasich.[3]

In the estimation of its Executive Director and founding member, Tom Zawistowski, the PCTP has engaged in online political expression which others might claim is abusive or harassing, and has made such statements with respect both to highly-placed Ohio Republicans and to government officials.[4]

---

[2] See Exhibit 1, Declaration of Thomas Zawistowski, Executive Director and founding member of the Portage County Tea Party, at ¶¶ 2 (position within the organization), 3 and 9 (purpose and online political statements of the same). See also: http://www.portagecountyteaparty.com, last accessed April 21, 2017) (explaining the organization and its mission).

[3] Zawistowski Decl., at ¶¶ 3, 5 and 6.

[4] Id., at ¶¶ 3, and 7.

Zawistowski is keenly aware of the statute, and the fact that those charged with its enforcement – county prosecutors – are themselves partisan politicians. As a result of this awareness, he and other members of the PCTP legitimately fear prosecution under the statute, and have begun to assess and to modify their own online commentary in that light.[5]

Plunderbund Media L.L.C. operates a popular blog known as Plunderbund, which provides original reporting and commentary on both Ohio and national politics. Its content is distributed on the internet as a blog, and via streams such as Facebook, Twitter and as a podcast.[6]

In the past, Plunderbund has published many articles critical of elected officials, including articles focusing on prosecutors and members of law enforcement. The frequency and highly critical nature of these articles is such that they might be considered to run afoul of the statute.[7]

For example, in 2014, Plunderbund published a series of five articles criticizing Defendant Attorney General Mike DeWine for awarding state legal contract work to law firms in exchange for political donations, and to conservative donors.[8] In 2013, Plunderbund published a series of articles sharply critical of the manner in which DeWine handled prosecution of a rape case in Steubenville which, at the time, drew national attention. Those articles included accusations of improper deals with and misstatements about witnesses, and accusations of political posturing.[9]

---

[5] Id., at ¶¶ 9–10.

[6] See Exhibit 2, Declaration of Joseph Mismas, managing editor and owner of Plunderbund Media, L.L.C., at ¶¶ 1 (position of affiant) and 2 (nature of online publications).

[7] Midmas Decl., at ¶ 5.

[8] Id., at ¶ 6 and 6 (a)(i)-(v) (outlining series and listing specific articles and the URLs at which they may be recovered)

[9] Id., at ¶ 6 (b)(i)-(iii) (outlining series and listing specific articles and the URLs at which they may be recovered).

Plunderbund has also been critical of county prosecutors. In January 2016, it published an article critical of Defendant Franklin County Prosecutor Ron O'Brien, which openly questioned his integrity. In another article, Plunderbund questioned his commitment to protecting public integrity.[10]  In 2013, Plunderbund suggested that the office of Warren County Prosecutor David Fornshell, suggesting that the office had been involved in criminal activities. In February of that year, Plunderbund highlighted efforts by Fornshell's office to intimidate critics of a school funding plan proposed by Governor Kasich. [11] Plunderbund has levelled serious criticisms at other county prosecutors as well.[12]

John Michael Spinelli is a writer with Plunderbund, who has written for a number of publications in his career.[13] He has engaged in online reporting critical of Defendant O'Brien and Governor Kasich at Plunderbund, as well as other prosecutors. He spent three years in the Ohio statehouse press corps, the Ohio Legislative Correspondents Association. After a series of articles critical of the Governor, Spinelli was, for the first time in four years, denied the credentials necessary to cover the State of the State Address.[14] Based upon his history of criticizing power public figures and politicians, Spinelli legitimately fears that the statute could be used against him.[15] The PCTP self-evidently is not a "media organization," nor is Spinelli in his individual capacity. Plunderbund is not a traditional media organization, and its Executive Director fears that it is not protected by the media organization exception of Rev. Code § 2917.21 (F).[16]

---

[10] Id., at ¶ 7 (a).

[11] Id., at ¶ 7 (b).

[12] Id.

[13] See Exhibit 3, Declaration of John Michael Spinelli, at ¶¶ 1-2.

[14] Id., at ¶¶ 4-5.

[15] Id., at ¶ 6.

[16] Mismas Decl., at ¶ 4.

Moreover, Plunderbund lacks the resources to provide a legal defense to its reporters and contributors should they be prosecuted under the statute, a consideration which its managing editor believes may have a substantial chilling effect on the articles they write.[17]

In sum, the Plaintiffs engage in core political expression of a sort squarely within the heartland of what the First Amendment protects, and yet legitimately fear prosecution under the statute based upon the provocative and critical nature of what they publish.

– LAW & ARGUMENT –

In deciding whether to grant a motion for preliminary injunction, a court weighs "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citation omitted). *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014); *Ohio State Conf. of NAACP v. Husted*, 768 F.3d 524, 532-33 (6th Cir. 2014). In First Amendment challenges such as this, the likelihood of success on the merits often is the determinative factor. *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

A.    **Plaintiffs likely will succeed in establishing that § 2917.21(B)(2) violates the First Amendment.**

"[I]n a facial challenge, a plaintiff must show substantial overbreadth: that the statute prohibits 'a substantial amount of protected speech both in an absolute sense and relative to [the statute's] plainly legitimate sweep[.]'" *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (internal citations omitted). Section 2917.21(B)(2) is unconstitutionally overbroad on its face,

---

[17] Id., at ¶ 3.

because it criminalizes much heated political and personal commentary of the sort that is routine when people discuss matters that outrage or greatly concern them.

### 1. **Section 2917.21(B)(2) is an alarmingly broad speech restriction**

Section 2917.21(B)(2) provides:

> No person shall knowingly post a text or audio statement or an image on an internet web site or web page for the purpose of abusing, threatening, or harassing another person.

The only exception to this prohibition extends to employees of certain traditional media, whose ranks the statute defines precisely.

> Divisions (A)(5) to (11) and (B)(2) of this section do not apply to a person who, while employed or contracted by a newspaper, magazine, press association, news agency, news wire service, cable channel or cable operator, or radio or television station, is gathering, processing, transmitting, compiling, editing, or disseminating information for the general public within the scope of the person's employment in that capacity or the person's contractual authority in that capacity

Ohio Rev. Code § 2917.21 (F).

The terms "[a]busing" and "harassing" are not defined in the statute, but Ohio courts have understood "abuse" to be a synonym for "mistreat," and "harass" to mean "to annoy or torment repeatedly and persistently." *See, e.g., State v. Dennis*, No. 1-97-42, 1997 WL 691448, *2 (Ohio Ct. App. Oct. 30, 1997) (reading "purpose of being abusive, threatening, annoying, or harassing" as meaning a "purpose to mistreat another person, to express a threat to another person, to irritate another, or to persistently torment"); *State v. Dart*, No. 23955, 2010 WL 4703406, *4 (Ohio Ct. App. Nov. 19, 2010) (defining "harass".) Under these definitions, public criticisms of government officials or other important figures could be criminally punished if they are seen as intended to mistreat or to persistently annoy their subjects.

- 6 -

Moreover, § 2917.21(B)(2) is not limited to threats, defamation, or any other category of unprotected speech. It deliberately extends, for instance, beyond Ohio Rev. Code § 2903.211, which bans menacing by stalking.

Nor is § 2917.21(B)(2) limited to harassing speech directed to an unwilling listener. Traditionally, criminal harassment laws covered speech directed to a particular and unwilling recipient — for instance, telephone calls, letters sent to a particular home, or e-mails sent to a particular person. For that reason, the Supreme Court upheld a federal law forbidding people from sending certain material to others once the recipients have told senders to stop, reasoning that "[N]o one has a right to press even 'good' ideas on an unwilling recipient." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 730, 738 (1970). Similarly, Ohio has barred unwanted e-mails or telephone calls after the recipient has told the speaker to stop. Ohio Rev. Code Ann. §§ 2913.01(X) and 2917.21(A)(5).

Unlike laws which merely protect unwilling listeners, Section 2917.21(B)(2) criminalizes public commentary **about** particular people, and thus prohibits far more than the dissemination of speech **to** people unwilling to hear it.

While "attempting to stop the flow of information into [one's] own household" (speech **to** a person) is constitutional, trying to block criticism of a person said "to the public" (speech **about** a person) – as section 2917.21(B)(2) does - violates the First Amendment. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 420 (1971); *see also Frisby v. Schultz*, 487 U.S. 474, 486 (1988) (upholding a ban on targeted residential picketing, because such picketing "is narrowly directed at the household, not the public," and is thus "fundamentally different from more generally directed means of communication that may not be completely banned").

Section 2917.21(B)(2) is thus "a criminal prohibition of alarming breadth," *United States v. Stevens*, 130 S. Ct. 1577, 1588 (2010). It potentially punishes a vast range of harsh rhetoric about political candidates. In the recent and hotly contested election, both Hillary Clinton and Donald Trump could have been punished under the statute, for Tweets made in Ohio that were intended to mistreat or persistently annoy the other. Ordinary citizens, who lack political allies and media defenders, are at even more risk of punishment. And while political expression has heightened value under the First Amendment, the prohibitions of the statute could just as easily be used to punish online speech of a private, but wholly protected nature as well.

Imagine a woman breaks up with an unfaithful boyfriend, and posts on her Facebook page (even once) her real feelings about him. A prosecutor may easily conclude that the woman posted her Facebook message with the "purpose of . . . abusing . . . or harassing" her ex-boyfriend, by making him feel shamed, ostracized, or "mistreat[ed]." Yet such speech about the details of daily life is also constitutionally protected. Even "[w]holly neutral futilities" that lack political, artistic, or similar value are "still sheltered from government regulation." *Stevens*, 130 S. Ct. at 1591.

Indeed, the § 2917.21(F) exemption for members of the media—an exemption that specifically mentions § 2917.21(B)(2)—represents an express acknowledgment that harsh and even "abusi[ve]" online commentary is inevitable in public debate. Ordinary Ohioans, such as the plaintiffs (who are politically active online but who are not "employed or contracted by a newspaper, magazine, press association, news agency, news wire service, cable channel or cable operator, or radio or television station"), should have the same right as media members to engage in such speech.

### 2.  Section 2917.21(B)(2) is not saved by the requirement of bad purpose

Section 2917.21(B)(2) is not rendered constitutional by the requirement that the speech have the purpose of abusing or harassing. The Supreme Court has repeatedly held that bad intentions do not strip speech of constitutional protection. Thus, in *Garrison v. Louisiana*, 379 U.S. 64, 78 (1964), the Court rejected the view that reputation-injuring speech could be punished because of the speaker's allegedly bad motives, such as a "wanton desire to injure." As the Court explained, "[i]f upon a lawful occasion for making a publication, [a speaker] has published the truth, and no more, there is no sound principle which can make him liable, even if he was actuated by express malice." *Id*. at 73 (internal quotation marks and citation omitted).

Likewise, in *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988), the Supreme Court overturned an intentional infliction of emotional distress verdict, concluding that a bad motive does not strip speech of constitutional protection. *Id*. at 53. And in *Snyder v. Phelps,* 562 U.S. 443, 458 (2011), the Court applied this principle to speech about private figures as well as public figures. More broadly, the Supreme Court has held that a "speaker's motivation" is generally "entirely irrelevant to the question of constitutional protection." *FEC v. Wis. Right to Life, Inc*., 551 U.S. 449, 468 (2007) (lead opinion) (citation omitted) and at 495 (Scalia, J., concurring in part and concurring in the judgment) (likewise rejecting a test based on speaker motivation).

The Court has offered two reasons for this protection of speech without regard to purpose. First, speech remains valuable even if its motives may be unsavory. "[E]ven if [a speaker] did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth." *Garrison*, 379 U.S. at 73. Second, restricting speech based on its bad motive risks chilling even well-motivated speech. "Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred . . . ." *Id.*

"No reasonable speaker would choose to run an ad covered by [the statute] if its only defense to a criminal prosecution would be that its motives were pure. An intent-based standard blankets with uncertainty whatever may be said, and offers no security for free discussion." *Wis. Right to Life*, 551 U.S. at 468 (Roberts, C.J., joined by Alito, J.) (internal quotation marks omitted). "First Amendment freedoms need breathing space to survive," and "[a]n intent test provides none." *Id*. at 468-69 (citations omitted). Any effort to distinguish restricted speech from unrestricted speech "based on intent of the speaker . . .would 'offe[r] no security for free discussion,' and would 'compe[l] the speaker to hedge and trim.'" *Id*. at 495 (Scalia, J., concurring in part and concurring in the judgment, joined by Kennedy and Thomas, JJ.) (internal citations and some internal quotation marks omitted; brackets in original).

The same applies to § 2917.21(B)(2). Plaintiffs, and others like them, will constantly have to worry that their harsh criticism of a longtime political foe might be seen as ill-motivated by a prosecutor, and might put them at risk of jail. Section 2917.21(B)(2) "offe[rs] no security for free discussion," and "provides no[]" "breathing space" for speech; it is therefore unconstitutional.

**3.      Section 2917.21(B)(2) Restricts Protected Speech Based On Its Content, And Must Be Judged Under Strict Scrutiny, Which It Cannot Pass.**

The government also generally "has no power to restrict expression because of its message, its ideas, its subject matter, or its content," *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (citation omitted)—and the Supreme Court has held that "defining regulated speech by its function or purpose" makes a restriction "content based." *Id*. at 2227 (emphasis added). Yet Section 2217.21(B)(2) criminalizes speech based on the speaker's purpose, focusing on speech that is intended to convey an insulting or offensive message. Nor can the restriction be treated as content-neutral under the so-called "secondary effects" doctrine. "The emotive impact of speech on its audience is not a 'secondary effect'"; laws that "regulate[] speech due to its potential primary impact"—such as their emotive impact on the targets of the speech—"must be considered content-

- 10 -

based." *Boos v. Barry*, 485 U.S. 312, 321 (1988) (lead opinion); id. at 334 (Brennan, J., concurring in the judgment). *See also Texas v. Johnson*, 491 U.S. 397, 412 (1989) ("the emotive impact of speech on its audience is not a 'secondary effect' unrelated to the content of the expression itself" (internal quotation marks omitted)).

Section 2917.21(B)(2), which aims to control the emotional impact of speech by banning speech intended to "abus[e]" or "harass[]," is therefore content-based.

Section 2917.21(B)(2) is thus subject to strict scrutiny, *Reed*, 135 S. Ct. at 2226–27, 2230, and is thus "presumptively unconstitutional" unless it "furthers a compelling interest and is narrowly tailored to achieve that interest." *Id*. at 2231 (internal quotation marks and citation omitted). Yet there is no compelling state interest in forbidding all online non-media speech (as opposed to, say, just threatening speech) that is seen as having a caustic purpose.

Moreover, Section 2917.21(B)(2) is far from "narrowly tailored." "To be narrowly tailored, a restriction on speech must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Bays v. City of Fairborn*, 668 F.3d 814, 823 (6th Cir. 2012) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). Yet Section 2917.21(B)(2) restricts a broad range of speech that falls far outside any First Amendment exception. Indeed, Section 2917.21(B)(2) does not require that the subject of the offending speech suffer any legally cognizable injury, or even be aware of the speech. *See State v. Bishop*, 787 S.E.2d 814, 820 (N.C. 2016) (reasoning that an anti-cyberbullying statute did not satisfy strict scrutiny, in part, because the statute did not require that the victim suffer an injury or even know about the offending speech). It is the antithesis of a narrowly tailored restriction.

4.      **The Recent Enactment of Section 2917.21(B)(2) Presents a Sufficiently Realistic Prospect of Enforcement to Confer Standing on the Plaintiffs and Make This Case Ripe for Review.**

"Whether the plaintiffs have standing and whether their claims are ripe come to the same inquiry: Have they established a credible threat of enforcement?" *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016). The Supreme Court has held that newly enacted laws criminalizing speech presumptively pose a credible threat of enforcement. In *Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 386–87 (1988), the Court held that booksellers had standing to challenge a state statute that barred the knowing display of visual or written materials that were supposedly harmful to juveniles, even though the booksellers had not been threatened with enforcement:

> We are not troubled by the pre-enforcement nature of this suit. **The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise**. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.

*Id*. at 393 (emphasis added). Similarly, Plaintiffs here face a credible threat of enforcement because Ohio has not suggested that the newly enacted law will not be enforced, and there is no reason to assume that prosecutors will just ignore it.

The Supreme Court has repeatedly recognized that newly-enacted statutes pose a credible threat of enforcement. In *Poe v. Ullman*, 367 U.S. 497, 507–08 (1961), the Court held that the plaintiffs lacked standing to assert a facial challenge because the statute had only been en-forced once in eighty years. But the Court later distinguished *Poe*, holding that plaintiffs asserting a facial challenge had standing, even though there had been no express threat of enforcement, when the statute in question was "recent and not moribund." *Doe v. Bolton*, 410 U.S. 179, 188 (1973).

District courts in the Sixth Circuit have adopted the same approach for First Amendment challenges. "[W]hen dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff

- 12 -

belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Bookfriends, Inc. v. Taft*, 223 F. Supp. 2d 932, 941 (S.D. Ohio 2002) (quoting *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996)). "The assumption that a statute will be enforced in some capacity is typically a safe one." *Adult Video Ass'n v. U.S. Dep't of Justice*, 853 F. Supp. 263, 266 n.4 (W.D. Tenn. 1994).

Likewise, other federal circuits have found that newly enacted statutes pose a credible threat of enforcement. *E.g., St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 486 (8th Cir. 2006) ("The threat of prosecution is greater under a statute enacted relatively recently.").

And more broadly, courts have held speakers need not draw the wrath of prosecutors before they can challenge a speech prohibition. "To establish injury in fact for a First Amendment challenge to a state statute, a plaintiff need not have been actually prosecuted or threatened with prosecution." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). "[In the First Amendment context], an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *N.H. Right to Life Political Action Comm.*, 99 F.3d at 13.

Similarly, this Court should conclude that Section 2917.21(B)(2), which went into effect just months ago, poses a credible threat of enforcement. And this is especially so because, "In the context of a free-speech overbreadth challenge like this one, a relaxed ripeness standard applies to steer clear of the risk that the law 'may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Carey v. Wolnitzek*, 614 F.3d 189, 196 (2010) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)).

Recent Sixth Circuit case law is consistent with the Supreme Court's precedents. "[M]ere allegations of a 'subjective chill' on protected speech are insufficient to establish an injury-in-fact for pre-enforcement standing purposes." *McKay v. Federspiel*, 823 F.3d 862, 868–69 (6th Cir.

2016) (emphasis added) (citing *Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012)). But, given the Supreme Court's decision in *American Booksellers* and the other precedents cited above, a newly-enacted criminal prohibition on speech offers more than mere allegations of a subjective chill. As the Fourth Circuit has noted, a "non-moribund statute that 'facially restrict[s] expressive activity by the class to which the plaintiff belongs' presents such a credible threat" of prosecution, "and a case or controversy thus exists in the absence of compelling evidence to the contrary," especially "when the presence of a statute tends to chill the exercise of First Amendment rights." *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) (quoting *N.H. Right to Life Political Action Comm.*, 99 F.3d at 15) (citation omitted).

Plaintiffs have thus satisfied Article III's justiciability requirements. The Supreme Court's holding in *American Booksellers* is squarely on point, and subsequent precedents have echoed that holding. Plaintiffs face a credible threat of enforcement because Section 2917.21(B)(2) is newly enacted and Ohio has not suggested that the law will not be enforced, nor is there a reason to assume otherwise.

**B.    Plaintiffs Will Suffer Irreparable Harm Without A Preliminary Injunction**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989).

Because the plaintiffs are likely to prevail on their overbreadth challenge, it therefore follows that they will suffer irreparable harm if the State is not enjoined from enforcing the law. "[T]o the extent that [the plaintiffs] can establish a substantial likelihood of success on the merits

of [their] First Amendment claim, [they also have] established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights." *Connection Distributing Co*., 154 F.3d at 288; *see also J.L. Spoons, Inc. v. Morckel,* 314 F. Supp. 2d 746, 761 (N.D. Ohio 2004) (finding irreparable injury to support granting a preliminary injunction based on the movant's likelihood of success on its overbreadth challenge).

### C.      Granting The Injunction Will Not Harm Third Parties.

"[I]f the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001). Because the plaintiffs are likely to prevail on their overbreadth challenge – and because such an injunction will leave the government free to punish genuinely dangerous speech, such as true threats or libel – no harm will come of granting the injunction.

### D.      A Preliminary Injunction Is In The Public Interest

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). This is especially true when First Amendment rights are at stake. *See Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) ("[T]he public as a whole has a significant interest in . . . protection of First Amendment liberties."). Conversely, enforcement of an unconstitutional law is against the public interest. *See Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982) ("[T]he public has no interest in the enforcement of laws in an unconstitutional manner."). Here, the public interest favors a preliminary injunction, because plaintiffs are likely to succeed on their overbreadth challenge. "[T]he public interest is promoted by the robust enforcement of constitutional rights." *Am. Freedom Def. Initiative v. Suburban Mobility for Reg'l Transp.*, 698 F.3d 885, 896 (6th Cir. 2012).

### E.    The Court Can And Should Dispense with Bond

The Sixth Circuit has repeatedly held that a district court, in its discretion, may dispense with the requirement for bond under Rule 65 (c). *Wright v. City of Cincinnati*, 450 F.Supp.2d 831, 841 (S.D.Ohio 2005) (*citing*: *Moltan Co. v. Eagle Pitcher Industries, Inc.,* 55 F.3d 1171, 1176 (6th Cir. (1995), *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978), *cert denied*, 440 U.S. 944 (1979); *Unbane v. Knapp Bros. Mfg. Co.*, 217 F.2d 810, 815–16 (6th Cir. 1954), *cert denied*, 349 U.S. 930 (1955)).

Rule 65 (c) contemplates security for the "costs and damages" suffered by a party wrongly enjoined. Here the Defendants have no financial interest in the enforcement of the contested statute, and the State will suffer no financial harm if enjoined from its enforcement pending a trial on the merits. For these reasons, the Court should dispense with bond.

### –Conclusion –

For the foregoing reasons, this Court should issue an injunction prohibiting the enforcement of Revised Code § 2917.21(B)(2).

Respectfully submitted,

/s/ Raymond V. Vasvari, Jr.

**Raymond V. Vasvari, Jr.**
 Ohio Bar No. 0055538
Vasvari & Zimmerman
1301 East Ninth Street
1100 Erieview Tower
Cleveland, Ohio 44114-1844
Telephone | 216.458.5880
Email | vasvari @ vasvarilaw.com
Telecopier | 216.928.0016

and

EUGENE VOLOKH *
California Bar No. 194464
SCOTT & CYAN BANISTER
 FIRST AMENDMENT CLINIC
UCLA School of Law
405 Hilgard Avenue
Los Angeles, California 90095
Telephone (310) 206-3926
volokh@law.ucla.edu

 *Pro Hac Vice admission pending

Attorney for Plaintiffs

— **Certificate of Service** —

    The foregoing Motion for Preliminary Injunction was filed today, 16 May 2017, via the Court Electronic Filing System. Upon the appearance of counsel for Defendants, copies will be provided by and may be obtained by counsel though the CM | ECF System.

    In addition, copies of this Motion and its supporting Memorandum of Law were served on each of the Defendants together with the Summons, Complaint, and other case initiating papers, each by Certified United States Mail, Return Receipt Requested, Sufficient Postage Prepaid, at the addresses below, the same day.

Mike DeWine
Ohio Attorney General
30 E. Broad St., 14th Floor
Columbus, OH 43215

Victor Vigluicci
Portage County Prosecutor
241 South Chestnut Street No. 1
Ravenna, OH 44266

Ron O'Brien
Franklin County Prosecutor
373 High Street 14th Floor
Columbus, Ohio 43215

Respectfully submitted,

/s/ Raymond V. Vasvari, Jr.

**RAYMOND V. VASVARI, JR.**
 Ohio Bar No. 0055538
VASVARI & ZIMMERMAN
1301 East Ninth Street
1100 Erieview Tower
Cleveland, Ohio 44114-1844
Telephone | 216.458.5880
Email | vasvari @ vasvarilaw.com
Telecopier | 216.928.0016

Counsel for the Plaintiffs