IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Plunderbund Media, L.L.C., et al., | Case No. 5:17-cv-01027-SL |
| Plaintiffs, | |
| – vs – | Judge Sara Lioi |
| Mike DeWine, Sued in His Official Capacity as Ohio Secretary of State, et al., | |
| Defendants. | |

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

EUGENE VOLOKH *
California Bar No. 194464
SCOTT & CYAN BANISTER
  FIRST AMENDMENT CLINIC
UCLA School of Law
405 Hilgard Avenue
Los Angeles, California 90095
Telephone (310) 206-3926
volokh@law.ucla.edu

* Admitted *pro hac vice*

RAYMOND V. VASVARI, JR.
Ohio Bar No. 0055538
VASVARI | ZIMMERMAN
1301 East Ninth Street
1100 Erieview Tower
Cleveland, Ohio 44114-1854
Telephone | 216.458.5880
Email | vasvari@vasvarilaw.com
Telecopier | 216.928.0016

Counsel for the Plaintiffs

# TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ..................................................................................................... ii

Introduction ....................................................................................................................1

Law & Argument ...........................................................................................................3

    1.  Section 2917.21(B)(2) restricts a vast range of speech......................................3

    2.  Section 2917.21(B)(2) is not saved by the requirement of bad purpose.............8

    3.  Section 2917.21(B)(2) restricts protected speech based on its content, and must be judged under strict scrutiny, which it cannot pass. ...........................................11

    4.  The recent enactment of § 2917.21(b)(2) presents a sufficiently realistic prospect of enforcement to confer standing on the plaintiffs and make this case ripe for review. ......14

Conclusion ...................................................................................................................18

Certificate of Service ..................................................................................................19

## Cases

*Adult Video Ass'n v. U.S. Dep't of Justice*, 71 F.3d 563 (6th Cir. 1995)....................................... 15

*Adult Video Ass'n v. U.S. Dep't of Justice*, 853 F. Supp. 263 (W.D. Tenn. 1994)....................... 15

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) ................................................................. 12

*Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012)............................................................................... 16

*Bookfriends, Inc. v. Taft*, 223 F. Supp. 2d 932 (S.D. Ohio 2002).................................................. 15

*Boos v. Barry*, 485 U.S. 312 (1988)................................................................................................ 12

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ................................................................................ 15

*Carey v. Wolnizek*, 614 F.3d 189, 196 (6th Cir. 2010) ................................................................... 15

*City of Akron v. Hawthorne*, 1989 WL 10333 (Ohio Ct. App. Feb. 8, 1989)................................. 7

*City of Alliance v. Cagey*, 2008 WL 2840606 (Ohio Ct. App. July 21, 2008) ............................ 10

*Commonwealth v. Bigelow*, 59 N.E.3d 1105 (Mass. 2016) ............................................................. 5

*Doe v. Bolton*, 410 U.S. 179 (1973).............................................................................................. 14

*FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449 (2007) ..................................................................... 9

*Frisby v. Schultz*, 487 U.S. 474 (1988) .......................................................................................... 4

*Garrison v. Louisiana*, 379 U.S. 64 (1964) ............................................................................... 8, 9

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988)............................................................. 2, 9

*McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016) .................................................................... 15

*Moriwake v. Rynearson*, No. 12-17 (Wash. Bainbridge Island Mun. Ct. July 17, 2017) .............. 6

*Morrison v. Olson*, 487 U.S. 654 (1988) ....................................................................................... 1

*N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999) ............................................... 16

*N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8 (1st Cir. 1996) ................ 15, 16

*Obsidian Finance Group, LLC v. Cox*, 740 F.3d 1284 (9th Cir. 2014) ......................................... 8

*Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971).................................................. 4

*Poe v. Ullman*, 367 U.S. 497 (1961) ......................................................................... 14

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) ................................................. 11, 12

*Rowan v. U.S. Post Office Dep't*, 397 U.S. 728 (1970) ............................................... 4

*Snyder v. Phelps,* 562 U.S. 443, 458 (2011) ............................................................... 9

*State v. Bishop*, 774 S.E.2d 337 (N.C. App. 2015) ................................................... 13

*State v. Bishop*, 787 S.E.2d 814 (N.C. 2016) ..................................................... 12, 13

*State v. Borchers*, 2006 WL 1331141 (N.J. Super. Ct. App. Div. May 17, 2006) ...... 11

*State v. Dart*, No. 23955, 2010 WL 4703406 (Ohio Ct. App. Nov. 19, 2010) ............. 4

*State v. Dennis*, No. 1-97-42, 1997 WL 691448 (Ohio Ct. App. Oct. 30, 1997).......... 4

*State v. Eidi*, 1994 WL 30511 (Ohio. Ct. App. Feb. 4, 1994) ..................................... 11

*State v. Ellison*, 900 N.E.2d 228 (Ohio. Ct. App. 2008) ...................................... 10, 11

*State v. Pleatman*, 2016 WL 6635323 (Ohio Ct. App. Nov. 9, 2016) .................... 10, 11

*State v. Smith*, 2014 WL 2974157 (Wis. Ct. App. July 3, 2014) ................................. 6

*Texas v. Johnson*, 491 U.S. 397 (1989) ................................................................... 12

*United States v. Argueta-Rosales*, 819 F.3d 1149 (9th Cir. 2016) ............................ 11

*United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011) .................................... 6

*United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999) ............................................... 5

*United States v. Shabban*, 612 F.3d 693 (D.C. Cir. 2010) ........................................ 11

*United States v. Stevens*, 559 U.S. 460 (2010).................................................. 1, 3, 8

*Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383 (1988) ........... 9, 14, 16, 18

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ................................................. 12

*Winter v. Wolnitzek*, 834 F.3d 681 (6th Cir. 2016) .................................................... 14

**Statutes and Rules**

Ohio Rev. Code § 2903.211 ................................................................................. 3

Ohio Rev. Code § 2917.21 ................................................................................. 7

Ohio Rev. Code § 2917.21(B)(2) ................................................................. passim

Ohio Rev. Code § 2917.21(F) ................................................................. 1, 2, 3, 8

**Other Authorities**

Complaint–Summons, State v. Speulda, No. 1604-S-2011-000159 (Hawthorne Bor. Mun. Ct., June 9, 2011) ................................................................................. 5

Dani Bostick, *Donald Trump: Verbal Abuser-in-Chief*, Huffington Post, June 29, 2017 .............. 2

Elana Sztokman, *10 Emotional Abuse Tactics That Trump Blatantly Used in the First Debate*, Everyday Feminism, Sept. 27, 2016 ........................................................... 2

Eugene Volokh, *Court Order Bans 'Memes' That Use Photo of Local Community Activist*, Volokh Conspiracy, Wash. Post, July 19, 2017 ..................................................... 6

Eugene Volokh, *One-to-One Speech vs. One-to-Many Speech, Criminal Harassment Laws, and "Cyberstalking"*, 107 Nw. U. L. Rev. 731 (2013) ........................................ 10

Kristie Cattafi, *Harassment Charges Dismissed Against Hawthorne Primary Candidate*, Gazette (Hawthorne, N.J.), Oct. 6, 2011 ........................................................ 5

Michael Powell, *Stain Permeates Basketball Blue Blood*, N.Y. Times, Apr. 1, 2017, at D1 ......... 2

Ron Grossman, *Differences Aside, Feelings for Obama Never Dimmed*, Chi. Trib., Jan. 16, 2017, at C2 ................................................................................. 2

Ohio Rev. Code § 2917.21(B)(2), enacted last year, criminalizes all online speech that a prosecutor and judge or jury conclude was said with a bad purpose:

> No person shall knowingly post a text or audio statement or an image on an internet web site . . . for the purpose of abusing, threatening, or harassing another person.

This is not limited to speech that falls within a First Amendment exception, such as the "true threats" exception.[1] It is not limited to unwanted speech said to a particular person. The only limitation is that some favored speakers—those who work for professional media—are exempted by § 2917.21(F). The rest of us get no such dispensation.

In *United States v. Stevens*, 559 U.S. 460 (2010), the Supreme Court struck down a ban on displays of animal cruelty, because that ban "create[d] a criminal prohibition of alarming breadth," *id.* at 474. Yet that ban was limited to visual depictions; § 2917.21(B)(2) covers even mere words. That ban was limited to depictions of real animals being mistreated or killed; § 2917.21(B)(2) covers an unlimited array of subjects. That ban expressly exempted "'any depiction that has serious religious, political, scientific, educational, journalistic, historical, or artistic value,'" 559 U.S. at 477–78 (citation omitted); § 2917.21(B)(2) lacks any such exemption.

If the breadth of that ban was "alarming," then § 2917.21(B)(2) is blaring loudly and flashing red lights. "Frequently an issue of this sort will come before the Court clad, so to speak, in sheep's clothing": "the potential of the asserted principle" to undermine constitutional values "is not immediately evident, and must be discerned by a careful and perceptive analysis. But this wolf comes as a wolf." *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting).

---

[1] Plaintiffs do not object to the prohibition on "threatening" speech, if that is limited to true threats of illegal conduct, and if that prohibition can be severed from the unconstitutional prohibitions on speech said "for the purpose of abusing . . . or harassing."

Nor does the requirement of an "abusing" or "harassing" purpose suitably narrow the law. "[I]n the world of debate about public affairs, many things done with motives that are less than admirable are protected by the First Amendment." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53 (1988).

Indeed, the very speech held to be protected even against civil liability in *Hustler* would likely have been criminally punishable under § 2917.21(B)(2) if said online by a mere citizen, rather than a specially exempted employee of a "magazine," § 2917.21(F). A jury could easily find that Larry Flynt had the purpose of "abusing" Jerry Falwell with his scurrilous, gratuitously insulting, "gross and repugnant" attack. 485 U.S. at 50. If the ad had been published repeatedly, a jury could likely find that Flynt had the purpose of "harassing" Falwell with such abuse. Yet the *Hustler* decision makes clear that even public excoriation intended to abuse or harass is constitutionally protected—both because such speech is itself constitutionally valuable, and because restricting such speech unduly chills even well-motivated speech.

And nothing in the statute excludes speech on political, religious, social, moral, or similar matters. The requirement of a purpose to "abuse" or "harass" surely does not. Modern debate is unfortunately full of speech that many view as intentional verbal abuse. *See, e.g.*, Dani Bostick, *Donald Trump: Verbal Abuser-in-Chief*, Huffington Post, June 29, 2017; Elana Sztokman, *10 Emotional Abuse Tactics That Trump Blatantly Used in the First Debate*, Everyday Feminism, Sept. 27, 2016; Michael Powell, *Stain Permeates Basketball Blue Blood*, N.Y. Times, Apr. 1, 2017, at D1 ("University officials . . . heaped abuse on the reporter and the paper, accusing them of vox populi scandal-mongering."); Ron Grossman, *Differences Aside, Feelings for Obama Never Dimmed*, Chi. Trib., Jan. 16, 2017, at C2 (""many everyday Americans heaped abuse and scorn on [Obama]").

Similar statutes in other jurisdictions have been used to criminally prosecute political speech, though courts have often reversed such convictions on First Amendment grounds. *See infra* p. 5. Ohio law does not carve out any political speech exception from § 2917.21(B)(2); and even if defendants do not intend to use the statute so broadly, such assurances of "prosecutorial discretion" are not adequate—"the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*." *Stevens*, 559 U.S. at 480. The only constitutionally adequate security that plaintiffs can have against the risk of being prosecuted under § 2917.21(B)(2) would come from this court, in the form of an injunction against the enforcement of this alarmingly overbroad statute.

## LAW & ARGUMENT

### 1. Section 2917.21(B)(2) restricts a vast range of speech

Section 2917.21(B)(2) provides:

> No person shall knowingly post a text or audio statement or an image on an internet web site or web page for the purpose of abusing, threatening, or harassing another person.

This is not limited to threats, defamation, or any other category of unprotected speech—it deliberately extends, for instance, beyond Ohio Rev. Code § 2903.211, which bans menacing by stalking. The only exception to this prohibition extends to employees of certain traditional media, whose ranks the statute precisely defines and limits:

> Divisions (A)(5) to (11) and (B)(2) of this section do not apply to a person who, while employed or contracted by a newspaper, magazine, press association, news agency, news wire service, cable channel or cable operator, or radio or television station, is gathering, processing, . . . or disseminating information for the general public within the scope of the person's employment . . . .

Ohio Rev. Code § 2917.21(F).

The terms "[a]busing" and "harassing" are not defined in the statute, but Ohio courts have understood "abuse" to be a synonym for "mistreat," and "harass" to mean "to annoy or torment

repeatedly and persistently." *See, e.g., State v. Dart*, No. 23955, 2010 WL 4703406, at *4 (Ohio Ct. App. Nov. 19, 2010) (defining "harass" that way); *State v. Dennis*, No. 1-97-42, 1997 WL 691448, at *2 (Ohio Ct. App. Oct. 30, 1997) (reading "purpose of being abusive, threatening, annoying, or harassing" as meaning a "purpose to mistreat another person, to express a threat to another person, to irritate another, or to persistently torment"). Under these definitions, public criticisms of government officials or other important figures could be criminally punished if they are seen as intended to mistreat or to persistently annoy their subjects.

Nor is § 2917.21(B)(2) limited to harassing speech directed to an unwilling listener. Traditionally, criminal harassment laws covered speech directed to a particular and unwilling recipient — for instance, telephone calls, letters sent to a particular home, or e-mails sent to a particular person. For that reason, the Supreme Court upheld a federal law forbidding people from sending certain material to others once the recipients have told senders to stop, reasoning that "no one has a right to press even 'good' ideas on an unwilling recipient." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 730, 738 (1970). Similarly, Ohio has barred unwanted e-mails or telephone calls after the recipient has told the speaker to stop. Ohio Rev. Code Ann. §§ 2913.01(X), 2917.21(A)(5).

Unlike laws which merely protect unwilling listeners, Section 2917.21(B)(2) criminalizes public commentary *about* particular people, and thus prohibits far more than the dissemination of speech *to* people unwilling to hear it. While "attempting to stop the flow of information into [a person's] own household" (speech to a person) is constitutional, trying to block criticism of a person said "to the public" (speech about a person) — as section 2917.21(B)(2) does — violates the First Amendment. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 420 (1971); *see also Frisby v. Schultz*, 487 U.S. 474, 486 (1988) (upholding a ban on targeted residential picketing,

because such picketing "is narrowly directed at the household, not the public," and is thus "fundamentally different from more generally directed means of communication that may not be completely banned").

Section 2917.21(B)(2) thus potentially punishes a vast range of harsh rhetoric about political candidates; indeed, similar statutes have been used in other states to prosecute political speech that was seen by prosecutors and factfinders as ill-motivated:

- A New Jersey law banning certain speech said with a "purpose to harass" was used to prosecute a person who distributed leaflets intended to criticize a gay Hawthorne city council candidate based on the candidate's sexual orientation. *See* Complaint-Summons, State v. Speulda, No. 1604-S-2011-000159 (Hawthorne Bor. Mun. Ct. June 9, 2011), http://www.volokh.com/wp/wp-content/uploads/2011/07/speuldacomplaint.pdf; Kristie Cattafi, *Harassment Charges Dismissed Against Hawthorne Primary Candidate,* Gazette (Hawthorne, N.J.), Oct. 6, 2011, http://www.northjersey.com/news/harassment-charges-dismissed-1.863097.

- A Massachusetts law banning speech "directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress" was applied to political letters sent to a town selectman. *Commonwealth v. Bigelow*, 59 N.E.3d 1105 (Mass. 2016) (reversing criminal harassment conviction on First Amendment grounds).

- A federal law banning unwanted anonymous telephone calls intended to (among other things) "annoy, abuse, . . . or harass" was used to prosecute a person who left racially insulting voice-mail messages for a U.S. Attorney. *United States v. Popa*, 187 F.3d 672, 676–78 (D.C. Cir. 1999) (reversing conviction on First Amendment grounds).

- A federal law banning online speech intended to "harass" or "cause substantial emotional distress" was used to prosecute a person who wrote many Twitter posts sharply criticizing a religious leader. *United States v. Cassidy*, 814 F. Supp. 2d 574, 584–85 (D. Md. 2011) (dismissing indictment on First Amendment grounds).

- A Wisconsin law banning online speech said with "intent to frighten, intimidate, threaten or abuse another person" was applied to punish vulgar and racist criticisms of the police posted on a police department page; the state defended the statute on the grounds that the speech was intended to abuse, not that it was threatening. *State v. Smith*, No. 2013AP2516–CR, 2014 WL 2974157, at *1 (Wis. Ct. App. July 3, 2014) (reversing conviction on First Amendment grounds).

- A Washington law allowing civil restraining orders based on speech that was said with "intent to harass, intimidate, torment, or embarrass"—and that would therefore violate Washington criminal harassment laws—was recently applied by a judge to a speaker who had engaged in political criticism of a community activist, and the order enjoined certain kinds of future political criticism. Order for Protection–Stalking, *Moriwaki v. Rynearson*, No. 12-17 (Wash. Bainbridge Island Mun. Ct. July 17, 2017), https://www.washingtonpost.com/news/volokh-conspiracy/wp-content/uploads/sites/14/2017/07/Permanent-Protective-Order.pdf; Findings of Fact & Conclusions of Law on Stalking Protection Order, *id.*, https://www.washingtonpost.com/news/volokh-conspiracy/wp-content/uploads/sites/14/2017/07/Findings-and-Conclusions.pdf; Eugene Volokh, *Court Order Bans 'Memes' That Use Photo of Local Community Activist*, Volokh Conspiracy, Wash. Post, July 19, 2017, https://www.washingtonpost.com/news/volokh-conspiracy/wp/2017/07/19/court-order-bans-memes-that-use-photo-of-local-community-activist/.

And there should be nothing surprising about such prosecutions: When nothing in a statute excludes political speech, the statute could well be applied to that speech as much as to other speech.

To be sure, no Ohio appellate decisions dealing with § 2917.21 have dealt with political speech. But until last August, § 2917.21 lacked the express ban on "knowingly post[ing] a text or audio statement or an image on an internet web site or web page." Now that the statute has been expressly amended to forbid such public "post[ing]" of "text," "audio," or "image[s]," the prospect of punishment for supposedly "abusive" or "harassing" political criticisms becomes especially serious, and especially chilling of protected speech.

Defendants assert that "State courts have consistently applied Ohio's telecommunications statute in ways that nullify Plaintiffs' mistaken conjecture about political-speech prosecutions," Def. Memo. 6, and that "[p]olitical speech is not at risk and cannot be prosecuted," *id.* at 10. Yet they do not point to any case that reads the statute as excluding political speech.

They do cite *City of Akron v. Hawthorne*, No. 13670, 1989 WL 10333, at *1 (Ohio Ct. App. Feb. 8, 1989), for the proposition that "the law is 'not directed at the restriction of the communication of ideas,'" Def. Mot. 7; but that statement was simply the court's characterization of the law's "aim[s]," *id.*, which the court gave as a justification for upholding the statute. *Hawthorne* did not purport to impose a limiting construction on § 2917.21, a statute that on its face can apply to "communication of ideas" as well as to any other speech, so long as the judge or jury concludes that the communication is done with a supposedly malign purpose.

Section 2917.21(B)(2) is also unconstitutional when applied to online speech that is nonpolitical but still fully protected. Imagine a woman breaks up with an unfaithful boyfriend, and posts on her Facebook page her real feelings about him. A prosecutor may easily conclude that the

woman posted her Facebook message with the "purpose of . . . abusing . . . or harassing" her ex-boyfriend, by making him feel shamed, ostracized, or "mistreat[ed]," *see supra* p. 3. Yet such speech about the details of daily life is also constitutionally protected: Even "[w]holly neutral futilities" that lack political, artistic, or similar value are "still sheltered from government regulation." *Stevens*, 559 U.S. at 479–80.

Indeed, the § 2917.21(F) exemption for members of the media — an exemption that specifically mentions § 2917.21(B)(2) — represents an acknowledgment that harsh and even "abusi[ve]" online commentary is inevitable in public debate. Ordinary Ohioans, such as the plaintiffs (who are politically active online but who are not "employed or contracted by a newspaper, magazine, press association, news agency, news wire service, cable channel or cable operator, or radio or television station"), should have the same right as media members to engage in such speech. *See, e.g.*, *Obsidian Finance Group, LLC v. Cox*, 740 F.3d 1284, 1291 (9th Cir. 2014) ("We agree with our sister circuits. The protections of the First Amendment do not turn on whether the defendant was . . . formally affiliated with traditional news entities . . . . As the Supreme Court has accurately warned, a First Amendment distinction between the institutional press and other speakers is unworkable . . . .").

**2. Section 2917.21(B)(2) is not saved by the requirement of bad purpose**

Section 2917.21(B)(2) is not rendered constitutional by the requirement that the speech have the purpose of abusing or harassing. The Supreme Court has repeatedly held that bad intentions do not strip speech of constitutional protection. Thus, in *Garrison v. Louisiana*, 379 U.S. 64, 78 (1964), the Court rejected the view that reputation-injuring speech could be punished because of the speaker's allegedly bad motives, such as a "wanton desire to injure." As the Court explained, "[i]f upon a lawful occasion for making a publication, [a speaker] has published the

truth, and no more, there is no sound principle which can make him liable, even if he was actuated by express malice." *Id.* at 73 (internal quotation marks and citation omitted).

Likewise, in *Hustler*, 485 U.S. at 53, the Supreme Court overturned an intentional infliction of emotional distress verdict, concluding that a bad motive does not strip speech of constitutional protection. And in *Snyder v. Phelps,* 562 U.S. 443, 458 (2011), the Court applied this principle to speech about private figures as well as public figures. More broadly, the Supreme Court has held that a "speaker's motivation" is generally "entirely irrelevant to the question of constitutional protection." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 468 (2007) (lead opinion) (citation omitted); *id.* at 495 (Scalia, J., concurring in part and concurring in the judgment) (likewise rejecting a test based on speaker motivation).

The Court has offered two reasons for this protection of speech without regard to purpose. First, speech remains valuable even if its motives may be unsavory. "[E]ven if [a speaker] did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth." *Garrison*, 379 U.S. at 73. Second, restricting speech based on its bad motive risks chilling even well-motivated speech. "Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred . . . ." *Id.*

"No reasonable speaker would choose to run an ad covered by [an intent-based statute] if its only defense to a criminal prosecution would be that its motives were pure. An intent-based standard blankets with uncertainty whatever may be said, and offers no security for free discussion." *Wis. Right to Life*, 551 U.S. at 468 (Roberts, C.J., joined by Alito, J.) (internal quotation marks omitted). "First Amendment freedoms need breathing space to survive," and "[a]n intent test provides none." *Id.* at 468–69 (citations omitted). Any effort to distinguish restricted speech from unrestricted speech "based on intent of the speaker . . . would 'offe[r] no security for

free discussion,' and would 'compe[l] the speaker to hedge and trim.'" *Id.* at 495 (Scalia, J., concurring in part and concurring in the judgment, joined by Kennedy and Thomas, JJ.) (internal citations and some internal quotation marks omitted; brackets in original); *see* Eugene Volokh, *One-to-One Speech vs. One-to-Many Speech, Criminal Harassment Laws, and "Cyberstalking,"* 107 Nw. U. L. Rev. 731, 773–83 (2013), http://www.law.ucla.edu/volokh/crimharass.pdf (discussing in more detail the problems with such intent-based tests in harassment statutes).

The same applies to § 2917.21(B)(2). Plaintiffs, and others like them, will constantly have to worry that their harsh criticism of a longtime political foe might be seen as ill-motivated by a prosecutor, and might put them at risk of jail. (A "purpose of abusing . . . or harassing" can of course often be inferred by the factfinder based on the factfinder's interpretation of circumstantial evidence. *See, e.g.*, *City of Alliance v. Cagey*, No. 2007 CA 00273, 2008 WL 2840606, at *3 (Ohio Ct. App. July 21, 2008).) Section 2917.21(B)(2) "offe[rs] no security for free discussion," and "provides no[]" "breathing space" for speech; it is therefore unconstitutional.

Defendants argue that, "Where there is any purpose broader than intentional harassment — as would exist with political discourse and criticism of government officials — the law does not apply." To support that claim, they cite *State v. Pleatman*, No. C–160234, 2016 WL 6635323, at *3 (Ohio Ct. App. Nov. 9, 2016), as holding that "there is no 'intent to harass' when there is 'a legitimate reason for posting [a] message.'" Def. Mot. 8. But *Pleatman* was not stating a general principle; rather, it was simply distinguishing an earlier precedent, *State v. Ellison*, 900 N.E.2d 228, 231 (Ohio. Ct. App. 2008), on the grounds that, in *Ellison*, "[w]e concluded that no rational trier of fact could have been convinced that the defendant had the intent to harass the other person because she had a legitimate reason for posting the message." *Pleatman*, 2016 WL 6635323, at *3. That sufficiency-of-the-evidence holding of *Ellison* simply reflected the state's failure to

"establish[] beyond a reasonable doubt that Ellison's specific purpose in making the telecommunication was to harass [its subject]." *Ellison*, 900 N.E.2d at 231.

Nothing in *Pleatman* or *Ellison* prevents someone from being convicted based on having *both* an intent to "abuse" a political enemy and an intent to politically criticize him. As a New Jersey appellate court held, it is reversible error to dismiss a harassment claim on the grounds that the speaker had one permissible purpose, if the speaker also has "the purpose of harassing" — "a person can have more than one purpose at the same time." *State v. Borchers*, 2006 WL 1331141, at *1 (N.J. Super. Ct. App. Div. May 17, 2006). "[E]vidence that a defendant had multiple intentions does not mean there was insufficient evidence of the requisite statutory intent." *United States v. Shabban*, 612 F.3d 693, 696 (D.C. Cir. 2010).

When a statute requires a specific purpose, "[t]he government must prove only that" the defendant had that purpose, "not that this was his only purpose." *United States v. Argueta-Rosales*, 819 F.3d 1149, 1157 (9th Cir. 2016); *see also State v. Eidi*, No. L-92-104, 1994 WL 30511, at *4 (Ohio. Ct. App. Feb. 4, 1994) ("a jury could reasonably conclude that even if [defendant] had more than one purpose for making the statement, one of his specific purposes was [the purpose required as an element by the criminal statute]," in that case a purpose "to retrieve proceeds from his insurance policy" by fraud). A political speaker can thus be found guilty under § 2917.21(B)(2) so long as the factfinder concludes that the speaker intended to engage in verbal abuse, even if the speaker also intended to make a political point.

3. **Section 2917.21(B)(2) restricts protected speech based on its content, and must be judged under strict scrutiny, which it cannot pass.**

The government also generally "has no power to restrict expression because of its message, its ideas, its subject matter, or its content," *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (citation omitted) — and the Supreme Court has held that "defining regulated speech by its

function or purpose" makes a restriction "content based." *Id.* at 2227 (emphasis added). Yet Section 2217.21(B)(2) criminalizes speech based on the speaker's purpose, focusing on speech that is intended to convey an insulting or offensive message. Nor can the restriction be treated as content-neutral under the so-called "secondary effects" doctrine. "The emotive impact of speech on its audience is not a 'secondary effect'"; laws that "regulate[] speech due to its potential primary impact" — such as their emotive impact on the targets of the speech — "must be considered content-based." *Boos v. Barry*, 485 U.S. 312, 321 (1988) (lead opinion); *id.* at 334 (Brennan, J., concurring in the judgment); *see also Texas v. Johnson*, 491 U.S. 397, 412 (1989) (same).

Section 2917.21(B)(2), which aims to control the emotional impact of speech by banning speech intended to "abus[e]" or "harass[]," is therefore content-based. That makes it subject to strict scrutiny, *Reed*, 135 S. Ct. at 2226–27, 2230, and thus "presumptively unconstitutional" unless it "furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 2231 (internal quotation marks and citation omitted). Yet there is no compelling state interest in forbidding all online non-media speech (as opposed to, say, just threatening speech) that is seen as having a caustic purpose.

Moreover, § 2917.21(B)(2) is far from "narrowly tailored." "To be narrowly tailored, a restriction on speech must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Bays v. City of Fairborn*, 668 F.3d 814, 823 (6th Cir. 2012) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). Yet Section 2917.21(B)(2) restricts a broad range of speech that falls far outside any First Amendment exception. Indeed, § 2917.21(B)(2) does not require that the subject of the offending speech suffer any legally cognizable injury, or even be aware of the speech. *See State v. Bishop*, 787 S.E.2d 814, 820 (N.C. 2016) (reasoning that an anti-cyberbullying statute did not satisfy strict scrutiny, in part, because

the statute did not require that the victim suffer an injury or even know about the offending speech). It is the antithesis of a narrowly tailored restriction.

Defendants argue that "[t]he law is a restriction on conduct, not speech," Def. Memo. 7. But that contradicts their claim that § 2917.21(B)(2) somehow excludes political speech: after all, if punishing posts intended to abuse or harass is simply a "conduct" restriction, then that would be equally true when applied to political posts as to other posts.

And in any event, a ban on "post[ing] a text or audio statement or an image on an internet web site or web page" is a ban on speech: It specifically targets expression, and does so because of a concern that the expression might be intentionally annoying or distressing to its subjects. As the North Carolina Supreme Court held in striking down a statute that banned the posting of certain information "[w]ith the intent to intimidate or torment a minor,"

> Posting information on the Internet — whatever the subject matter — can constitute speech as surely as stapling flyers to bulletin boards or distributing pamphlets to passersby — activities long protected by the First Amendment. Such communication does not lose protection merely because it involves the "act" of posting information online, for much speech requires an "act" of some variety — whether putting ink to paper or paint to canvas, or hoisting a picket sign, or donning a message-bearing jacket.

*Bishop*, 787 S.E.2d at 817–18. Indeed, the state supreme court said this in the course of reversing a lower court decision that upheld the statute precisely on the grounds that it supposedly "prohibits conduct, not speech." *State v. Bishop*, 774 S.E.2d 337, 344–45 (N.C. App. 2015). First Amendment protections cannot be evaded simply by recharacterizing the distribution of "statement[s]" and "image[s]" as "conduct."

**4. The recent enactment of § 2917.21(b)(2) presents a sufficiently realistic prospect of enforcement to confer standing on the plaintiffs and make this case ripe for review.**

"Whether the plaintiffs have standing and whether their claims are ripe come to the same question: Have they established a credible threat of enforcement?" *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016). The Supreme Court has held that newly enacted laws criminalizing speech presumptively pose a credible threat of enforcement. In *Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 386–87 (1988), the Court held that booksellers had standing to challenge a state statute that barred the knowing display of visual or written materials that were supposedly harmful to juveniles, even though the booksellers had not been threatened with enforcement:

> We are not troubled by the pre-enforcement nature of this suit. *The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise.* We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.

*Id.* at 393 (emphasis added). Similarly, Plaintiffs here face a credible threat of enforcement because defendants have not suggested that the newly enacted law will not be enforced, and there is no reason to assume that prosecutors will just ignore it. (Defendants have argued that the statute would not be enforced against "political speech," but for the reasons given in Part 1 above, there is no basis for reading any "political speech" exception into the statute.)

The Supreme Court has repeatedly recognized that newly-enacted statutes pose a credible threat of enforcement. In *Poe v. Ullman*, 367 U.S. 497, 507–08 (1961), the Court held that the plaintiffs lacked standing to assert a facial challenge because the statute had only been enforced once in eighty years. But the Court later distinguished *Poe*, holding that plaintiffs asserting a facial challenge had standing, even though there had been no express threat of enforcement, when the statute in question was "recent and not moribund." *Doe v. Bolton*, 410 U.S. 179, 188 (1973).

District courts in the Sixth Circuit have adopted the same approach for First Amendment challenges. "[W]hen dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Bookfriends, Inc. v. Taft*, 223 F. Supp. 2d 932, 941 (S.D. Ohio 2002) (quoting *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996)). When it comes to facial challenges, "[t]he assumption that a statute will be enforced in some capacity is typically a safe one." *Adult Video Ass'n v. U.S. Dep't of Justice*, 853 F. Supp. 263, 266 n.4 (W.D. Tenn. 1994), *aff'd*, 71 F.3d 563 (6th Cir. 1995).

And while the Sixth Circuit held that plaintiffs lacked standing in *Adult Video Ass'n*, it did so because that case (unlike this one) did not involve a facial challenge: "Adult Video's argument that a general fear of prosecution under an *unchallenged* federal law is sufficient to establish standing clearly is without merit." 71 F.3d at 566 (emphasis added); *id.* at 567 (distinguishing an earlier case that involved a "pre-enforcement *facial* challenge," because, "as a facial challenge to an obscenity statute, [the earlier case] fits squarely within the 'overbreadth' exception to traditional standing requirements" (emphasis in original). The more recent Sixth Circuit decision in *Carey v. Wolnitzek* likewise recognizes that, "In the context of a free-speech overbreadth challenge like this one, a relaxed ripeness standard applies to steer clear of the risk that the law 'may cause others not before the court to refrain from constitutionally protected speech or expression.'" 614 F.3d 189, 196 (6th Cir. 2010) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)).

To be sure, "mere allegations of a 'subjective chill' on protected speech are insufficient to establish an injury-in-fact for pre-enforcement standing purposes." *McKay v. Federspiel*, 823 F.3d 862, 868–69 (6th Cir. 2016) (emphasis added) (citing *Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir.

2012)). But, as is made clear by the Supreme Court's precedent in *American Booksellers* and the other precedents cited above, a newly-enacted criminal prohibition on speech offers more than mere allegations of a subjective chill.

As the Fourth Circuit has noted, a "non-moribund statute that 'facially restrict[s] expressive activity by the class to which the plaintiff belongs' presents such a credible threat" of prosecution, "and a case or controversy thus exists in the absence of compelling evidence to the contrary," especially "when the presence of a statute tends to chill the exercise of First Amendment rights." *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) (quoting *N.H. Right to Life Political Action Comm.*, 99 F.3d at 15) (citation omitted). "The threat of prosecution is greater under a statute enacted relatively recently." *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 486 (8th Cir. 2006); *see also N.H. Right to Life Political Action Comm.*, 99 F.3d at 15 (1st Cir.). "To establish injury in fact for a First Amendment challenge to a state statute, a plaintiff need not have been actually prosecuted or threatened with prosecution." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). "[In the First Amendment context], an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *N.H. Right to Life Political Action Comm.*, 99 F.3d at 13.

And plaintiffs are especially concerned about the risk of enforcement because they often sharply criticize the very officials who can influence enforcement decisions.[2] For example, in 2014, Plunderbund published a series of five articles alleging that Defendant Attorney General Mike DeWine awarded state legal contract work to law firms in exchange for political donations,

---

[2] *See* Declaration of Joseph Mismas ECF No. 2-3, at ¶ 5.

and to conservative donors.[3] In 2013, Plunderbund published a series of articles sharply critical of how DeWine handled a rape prosecution in Steubenville which, at the time, drew national attention. Those articles included accusations of improper deals with and misstatements about witnesses, and accusations of political posturing.[4]

Plunderbund has also been critical of county prosecutors. In January 2016, it published an article critical of Defendant Franklin County Prosecutor Ron O'Brien, which openly questioned his integrity. In another article, Plunderbund questioned his commitment to protecting public integrity.[5] In 2013, Plunderbund wrote about the office of Warren County Prosecutor David Fornshell, suggesting that the office had been involved in criminal activities. In February of that year, Plunderbund highlighted efforts by Fornshell's office to intimidate critics of a school funding plan proposed by Governor Kasich.[6] Plunderbund has sharply criticized other county prosecutors as well.[7]

Plaintiff John Michael Spinelli, writing at Plunderbund, has criticized O'Brien and Governor Kasich, as well as other prosecutors. He spent three years in the Ohio statehouse press corps, the Ohio Legislative Correspondents Association, but after a series of articles critical of the Governor, he was—for the first time in four years—denied the credentials necessary to cover the State of the State Address.[8] Based on his history of criticizing powerful public figures and politicians, Spinelli is concerned that he could be subjected to prosecution as well, especially given

---

[3] *Id.* at ¶ 6.

[4] *Id.* at ¶ 6(b)(i)–(iii).

[5] *Id.* at ¶ 7(a).

[6] *Id.* at ¶ 7(b).

[7] *Id.*

[8] *See* Declaration of John Michael Spinelli, ECF No. 2-4, at ¶¶ 4-5.

the normal human tendency to view criticism of oneself and one's allies as deliberate "harassment" or "abuse."[9]

Plaintiffs have thus satisfied Article III's justiciability requirements. The Supreme Court's holding in *American Booksellers* is squarely on point, and subsequent precedents have echoed that holding. Plaintiffs face a credible threat of enforcement because § 2917.21(B)(2) is newly enacted and there is no reason to doubt that at least some prosecutors will enforce it.

### CONCLUSION

Last year, the Ohio Legislature enacted a sweeping ban on a vast range of speech. Plaintiffs have amply stated a claim that this ban violates the First Amendment, and chills their speech by threatening them with criminal prosecution.

Respectfully submitted,

/s/ Raymond V. Vasvari, Jr.

**RAYMOND V. VASVARI, JR.**
 Ohio Bar No. 0055538
VASVARI & ZIMMERMAN
1301 East Ninth Street
1100 Erieview Tower
Cleveland, Ohio 44114-1844
Telephone | 216.458.5880
Email | vasvari @ vasvarilaw.com
Telecopier | 216.928.0016

**EUGENE VOLOKH**
California Bar No. 194464
SCOTT & CYAN BANISTER
FIRST AMENDMENT CLINIC
UCLA School of Law
405 Hilgard Avenue
Los Angeles, California 90095
Telephone | (310) 206-3926
Email | volokh@law.ucla.edu
Admitted *pro hac vice*

---

[9] *Id.* at ¶ 6.

**CERTIFICATE OF SERVICE**

The foregoing Opposition to the Motion to Dismiss was filed today, July 21, 2017, via the Court Electronic Filing System. All counsel are registered through the CM | ECF System.

Respectfully submitted,

/s/ Raymond V. Vasvari, Jr.

**RAYMOND V. VASVARI, JR.**
 Ohio Bar No. 0055538
VASVARI & ZIMMERMAN
1301 East Ninth Street
1100 Erieview Tower
Cleveland, Ohio 44114-1844
Telephone | 216.458.5880
Email | vasvari @ vasvarilaw.com
Telecopier | 216.928.0016

Counsel for the Plaintiffs

**– CERTIFICATE OF COMPLIANCE –**

Undersigned counsel cerrtifies in complinance with L.R. Civ. 7.1(f) that this case has not yet been assigned to a track for purposes of differentiated case magagment, that counsel believe the case is suitable for placement on the standard track, and this this memorandum, in response to a dispositive motion, is less than twenty pages in length exclusive of front matter and formalities.

Respectfully submitted,

/s/ Raymond V. Vasvari, Jr.

**RAYMOND V. VASVARI, JR.**
 Ohio Bar No. 0055538
VASVARI & ZIMMERMAN\

Counsel for the Plaintiffs