# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO, EASTERN DIVISION (Akron)

| | |
|---|---|
| PLUNDERBUND MEDIA L.L.C., *et al.*, | : |
| | : |
| Plaintiffs, | : Case No. 5:17cv01027 |
| | : |
| v. | : Judge Sara Lioi |
| | : |
| OHIO ATTORNEY GENERAL | : |
| MIKE DEWINE, *et al.*, | : |
| | : |
| Defendants. | : |

## DEFENDANTS' JOINT REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS

Respectfully submitted,

MICHAEL DEWINE (0009181)
Ohio Attorney General

*s/ Steven T. Voigt*
STEVEN T. VOIGT (0092879)*
Principal Assistant Attorney General
   *Lead and Trial Counsel*
ZACHERY P. KELLER (0086930)
Associate Assistant Attorney General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872; Fax: (614) 728-7592
Steven.Voigt@OhioAttorneyGeneral.gov
Zachery.Keller@OhioAttorneyGeneral.gov

*Counsel for Defendant*
*Ohio Attorney General Mike DeWine*

*Additional counsel on following page*

*s/ Nick A. Soulas, Jr.[by email authorization]*
NICK A. SOULAS, JR. (0062166)
Office of the Prosecuting Attorney
Franklin County
373 South High Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-525-3520 | Fax: 614-525-6012
nasoulas@franklincountyohio.gov

*Counsel for Defendant Franklin County Prosecutor Ron O'Brien*


*s/ Denise L. Smith [by email authorization]*
DENISE L. SMITH (0017811)
Office of the Prosecuting Attorney
Portage County
241 South Chestnut Street
Ravenna, OH 44266
Tel: 330-297-3850 | Fax: 330-297-4594
dsmith@portageco.com

*Counsel for Defendant Portage County Prosecutor Victor Vigluicci*

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

I.   **INTRODUCTION**

The Complaint should be dismissed.  Plaintiffs do not have standing because the challenged law does not reach political expression.

Plaintiffs challenge *a portion* of one provision in Ohio's telecommunication anti-harassment statute, R.C. 2917.21(B)(2) (the "challenged law"), claiming that the challenged law's language "for the purpose of abusing . . . or harassing" can be used to prosecute their online "political expression."  Complaint, Doc. 1 at Page ID # 5, ¶ 17 ("Plaintiffs and their members and authors, wish to engage in constitutionally protected political expression . . .").  But this language is not new, and Plaintiffs have not identified any instance where a prosecutor applied the statutory language to political expression.

Going back to 1972—nearly fifty years—iterations of the Ohio anti-harassment statute have had language similar, if not identical, to that which Plaintiffs challenge here.  Since 1972, the statute has prohibited purposeful harassment.  Since 1999, the statute has applied to computer telecommunications.  In August 2016, the General Assembly passed the challenged law, which modestly alters the 1999 version of the statute.

The attachments to Plaintiffs' Complaint support the conclusion that the challenged law will not be used to prosecute political expression.  Plaintiffs (in the aggregate) say they have posted online "thousands" of political criticisms and opinions since 2006.  *See*, *e.g.*, Declaration of John Michael Spinelli, at ¶ 2; Declaration of Joseph Mismas, at ¶ 5; Declaration of Tom Zawistowski, at ¶¶ 2-3.  Critically, however, Plaintiffs do not allege that any Ohio prosecutor has ever used Ohio's anti-harassment laws to prosecute (or to threaten to prosecute) anyone for political expression—despite Plaintiffs' thousands of postings and innumerable online, telephonic, and written political opinions by others.  Not even a single threat of prosecution, despite decades of anti-harassment legislation on

the books, despite innumerable online political postings. Plaintiffs can only speculate, and that speculation is both unfounded and insufficient for standing.

Ohio courts have narrowly interpreted and applied the disputed language in the challenged law. Plaintiffs' Opposition ignores this narrow approach and instead focus on irrelevant statutes from States other than Ohio. Plaintiffs do not acknowledge the Ohio judiciary's narrow construction of the disputed language in ways that exclude protected speech. That narrow interpretation and application is conclusive. Also, the Attorney General and the two prosecuting attorneys sued in this case recognize and affirm that the challenged law does not reach political expression. If this Court has any lingering doubt about the construction of the challenged law, then a dismissal on this basis—acknowledging and reiterating Ohio's narrow construction of the challenged law and the exclusion of political expression from its scope—will put to rest Plaintiffs' concerns.

## II. LEGAL ARGUMENT

### A. Plaintiffs do not have standing because there is no credible threat of prosecuting political expression under the challenged law

Plaintiffs have not established a credible threat of prosecution for political expression. Plaintiffs therefore have not met their burden to "clearly [] allege facts demonstrating that [they are the] proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (citations omitted). They lack standing.

Standing cannot be "inferred argumentatively" but rather "must affirmatively appear in the record." *Id*. Plaintiffs do not allege that any prosecution is pending under the challenged law for political expression. And they have not established that they face a substantial risk of prosecution for political expression. *See McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir.2015) (holding that a pre-enforcement challenge to a statute requires a pending prosecution or the

"substantial risk" of prosecution). They instead argue about what they think "could" hypothetically happen, asking the Court, for instance, to "[i]magine" scenarios. *See* Opposition, Doc. 20 at Page ID # 123, 126. Plaintiffs' failure to plead injury-in-fact—a threshold standing requirement—should end this litigation.

### 1. Plaintiffs have not identified any instance of a political-expression prosecution under Ohio's decades-old anti-harassment laws

Plaintiffs' characterization of the challenged law as "newly enacted" (*see* Opposition, Doc. 20 at Page ID # 133) ignores the law's historical context.

For decades, Ohio has prohibited intentionally abusive communications using telephonic and electronic devices. While Ohio telecommunication anti-harassment laws have changed over time to reflect advances in technology, Plaintiffs have not pointed to a single instance of law enforcement using any of Ohio's laws to prosecute political expression. *Cf. id*. p. 7 (conceding there is "no Ohio appellate decision[] dealing with § 2917.21 [that] ha[s] dealt with political speech."). This long history without any prosecution of political expression shows that Plaintiffs' purported fears are unfounded.

Ohio's anti-harassment laws extend back to at least 1959. That year, the General Assembly passed a statute prohibiting "language" over a telephone "of a lewd, lascivious, or indecent character, nature, or connotation for the sole purpose of annoying such other person." R.C. 4931.31 (1959) (Ex. A). Thirteen years later, in 1972, Ohio replaced the 1959 law with a new statute prohibiting telephone calls "with purpose to harass" and "without purpose of legitimate communication." R.C. 2917.21(B) (1972) (Ex. B). In 1981, the General Assembly amended the 1972 law to prevent "abuse":

> No person shall make or cause to be made a telephone call, or permit a telephone call to be made from a telephone under his control, with purpose to abuse, threaten, annoy, or harass another person.

R.C. 2917.21(B) (1981) (Ex. C).  Thus, by 1972, Ohio's anti-harassment statute prohibited purposeful harassment and the General Assembly added purposeful abuse nine years later.

In 1999, presumably based on the widespread use of personal computers, Ohio substituted the word "telecommunication" for "telephone call":

> No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person.

R.C. 2917.21(B) (1999) (Ex. D).  At that time, the General Assembly also removed the word "annoy."  *See* Motion to Dismiss, Doc. 19 at Page ID # 103.  Elsewhere, Ohio statutes in 1999 defined "telecommunication" and "telecommunications device" broadly as:

> "Telecommunication" means the origination, emission, dissemination, transmission, or reception of data, images, signals, sounds, or other intelligence or equivalence of intelligence of any nature over any communications system by any method, including, but not limited to, a fiber optic, electronic, magnetic, optical, digital, or analog method.

R.C. 2913.01(X) (1999) (Ex. E).

> "Telecommunications device" means any instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit, scanner, telephone, cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem.

R.C. 2913.01(Y) (1999) (Ex. E).  Thus, by 1999, the anti-harassment law prohibited abuse and harassment using computer devices.  For example, a 2008 case, *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228 (1st Dist.), concerned a public MySpace posting.

In September of last year, again likely based on evolving methods of interpersonal communication, the legislature modestly amended the 1999 statute to add the challenged law:

> No person shall knowingly post a text or audio statement or an image on an internet web site or web page for the purpose of abusing, threatening, or harassing another person.

R.C. 2917.21(B)(2) (2016) (Ex. F).

In sum, the challenged law in its current form has been in place for nearly one year, including during the 2016 presidential election. It is the culmination of anti-harassment legislation that has existed in Ohio since 1959. It modestly amends telecommunication anti-harassment legislation passed in 1999, which already covered internet telecommunications.

Despite decades of anti-harassment legislation, Plaintiffs do not allege a single instance in which a prosecutor used Ohio's anti-harassment laws to prosecute someone for political expression. And, Plaintiffs implicitly concede that the pre-2016 language of the anti-harassment law is relevant. They, for instance, rely on a 2010 opinion, *State v. Dart*, 2nd Dist. Montgomery No. 23955, 2010-Ohio-5637, and a 1997 opinion, *State v. Dennis*, 3rd Dist. Hamilton No. 1-97-42, 1997 Ohio App. LEXIS 5049, 1997 WL 691448 (Oct. 30, 1997). *See* Opposition, Doc. 20 at Page ID # 122-23.

### 2. Political expression is not within the scope of the narrowly-construed challenged law

Plaintiffs' conjecture about the scope of the challenged law is divorced from the extensive record of Ohio court decisions narrowly interpreting and applying the disputed language. Ohio's construction of that language is indispensable to this Court's analysis. "In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 n.5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). *See also Columbia Natural Resources v. Tatum*, 58 F.3d 1101, 1108 (6th Cir.1995) (with a constitutional challenge to a state statute, "a federal court only reviews the state statute and the state court decisions interpreting it"); *Hutchison v. Marshall*, 744 F.2d 44, 46 (6th Cir.1984)

("state courts are the final authority on state law"); *Bates v. Warden, Chillicothe Corr. Inst.*, S.D.Ohio No. 2:14-cv-01325, 2015 U.S. Dist. LEXIS 120591, *23 n. 3, 2015 WL 5299454 (Sept. 10, 2015) (federal courts "defer[] to a state court's interpretation of its own laws").

As explained below (and in Ohio's motion to dismiss), Ohio courts have construed the Ohio anti-harassment laws in ways that would exclude political expression. *See* Motion to Dismiss, Doc. 19 at Page ID # 106-11. This "narrow construction" by the state courts "significantly diminishe[s]" any "threat of future injury." *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 964 (6th Cir.2009) (ordering dismissal, based on lack of standing, of a challenge to Michigan's rules of professional conduct for lawyers).

### a. Ohio courts protect the communication of ideas

Ohio courts have already construed the disputed language in the challenged law to the point at which Plaintiffs want it, so that it "does not restrict protected speech." *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 38. Thus, the challenged law does not reach communications with a "legitimate purpose." *State v. Pleatman*, 1st Dist. Hamilton No. C-160234, 2016-Ohio-7659, ¶ 13. Indeed, the "statute's scope" is "limit[ed]" to "criminal conduct" and does not affect "offensive speech." *Ellison*, 2008-Ohio-5282, ¶ 15. For example, making death threats, *see State v. Baron*, 2003-Ohio-5376, ¶¶ 12, 46, is not a protected "legitimate purpose," but as the concurrence in *Ellison* stated, "posting an annoying—but nonthreatening—comment on a website is not a crime under this statute." *Id*. at ¶ 20 (Painter, J., concurring). Ohio's narrow construction of the disputed language is demonstrated by a number of Ohio decisions, including *Kronenberg*, *Pleatman*, and *Ellison*.

Likewise, the court in *Akron v. Hawthorne* held that the statute is "not directed at the restriction of the communication of ideas[.]" *Akron v. Hawthorne*, 9th Dist. Summit No. 13670, 1989 Ohio App. LEXIS 407, at *3 (Feb. 8, 1989). The *State v. Klingel* court implied that "merely

6

engag[ing] in a public discourse" is not covered by the statute. *State v. Klingel*, 9th Dist. Lorain No. 15CA010876, 2017-Ohio-1183, ¶ 17. And the court in *State v. Pillar* noted that "R.C. 2917.21 has been recognized as advancing a legitimate state interest in protecting citizens from unwanted intrusions[.]" *State v. Pillar*, 5th Dist. Tuscarawas No. 2012 AP 01 0007, 2012-Ohio-3926, ¶ 18.

Plaintiffs unsuccessfully attempt to distinguish *Hawthorne*, *Ellison*, and *Pleatman*. They contend that *Ellison* was constrained to a mere discussion of evidence. Opposition, Doc. 20 at Page ID # 129. To the contrary, *Ellison* held that an individual could not have "made a telecommunication with the purpose to harass" because "she had a legitimate purpose for posting the accusation" of alleged criminal behavior (child molestation) "on the Internet." *Ellison*, ¶ 17. Plaintiffs argue that *Pleatman* "simply distinguish[ed] an earlier precedent," *Ellison*. Opposition, Doc. 20 at Page ID # 129. In fact, *Pleatman*, a 2016 opinion, re-affirmed *Ellison*'s 2008 holding that a communication made with "a legitimate purpose" does not fall within the disputed language of the anti-harassment law. *Pleatman*, ¶ 13. Plaintiffs say that *Hawthorne* merely "characteriz[ed]" the disputed language. Opposition, Doc. 20 at Page ID # 126. In fact, a more concise construction might not be possible than *Hawthorne*, where the court stated that the "terms" of the disputed language "are not directed at the restriction of the communication of ideas." *Hawthorne*, *3.

Plaintiffs do not try to distinguish *Klingel* and *Kronenberg*. They also readily acknowledge that "[t]o be sure," there are no "Ohio appellate decisions" stating that political expression falls within the scope of the challenged law. Opposition, Doc. 20 at Page ID # 126.

### b. Ohio courts limit the scope of the challenged law to conduct targeting and intended to reach a victim

Plaintiffs appear to suggest, incorrectly, that the challenged law is more expansive than abuse and harassment *intended to reach a victim*. *See generally* Opposition, Doc. 20 at Page ID

7

# 123. Ohio courts, however, have interpreted the disputed language in the challenged law contrary to Plaintiffs' assertion. To fall within the challenged law, conduct needs to be directed at *and intended to reach* the victim.

Earlier this year, a jury in Lorain County convicted a defendant under R.C. 2717.21(B) for "very specific threats" posted on a public Facebook page "about taking part in a coordinated effort to murder police officers." *Klingel*, 2017-Ohio-1183, ¶ 17. The defendant posted his threats online "with the assumption that law enforcement officials were looking at his [Facebook] page." *Id.* at ¶ 19. The Ninth Appellate District rejected the defendant's free-speech defense, stating that the posts were "not merely . . . public discourse about the police work in his community." *Id.* at ¶ 17. Instead, the defendant directed numerous posts at the police, including threats such as "She is a cop they will all die," "So who is down to kill some cops I want to arrange where we can all kill some at a certain time," and "any law enforcement agent looking at my page . . . take off your badges . . . You will comply or be compelled to comply." *Id.* at ¶¶ 12, 19.

Other decisions reinforce *Klingel*'s holding. The *Ellison* court held that the State's "burden is not met by establishing only that the defendant knew or should have known that her conduct would probably cause harassment." *Ellison*, 2008-Ohio-5282, ¶ 15. Instead, there needs to be a "specific intent to harass" a victim. *Id.* at ¶ 16. And, while there need not be actual contact with the victim, the telecommunication must be "criminal behavior" "directed" at the victim. *Id.* The *Harshbarger* Court noted that "specific intent" to abuse or harass a victim is required. *State v. Harshbarger*, 3rd Dist. Auglaize No. 2-09-19, 2010-Ohio-4413, ¶ 13 (Sept. 20, 2010). And, lastly, the *Kronenberg* court stated, "The critical inquiry . . . [is] whether the purpose . . . was to abuse, threaten or harass" a victim. *Kronenberg*, 2015-Ohio-1020 at ¶ 15.

In sum, there is a lengthy record of court decisions narrowly construing the challenged law's disputed language and political expression is not within its scope. Plaintiffs' threat-of-enforcement argument is not credible.

### c. Defendants' statement that political expression is outside the scope of the challenged law also weighs against Plaintiffs' position

Defendants' recognition that "Ohio has not and cannot [p]rosecute [p]olitical [s]peech under the [c]hallenged [l]aw" (Motion to Dismiss, Doc. 19 at Page ID #106) is also entitled to some weight. By way of example, in an analysis of potential pre-enforcement standing in *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 302, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), the United States Supreme Court observed that "the State ha[d] not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices." Likewise, in *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988), the Supreme Court noted that Virginia "ha[d] not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise." Other decisions recognize that an "enforcement agency[']s]" "limiting construction" of a statute is relevant to a court's interpretation of a statute. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 n.5 (1982) (facial overbreadth and vagueness case). *See also Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (same). Plaintiffs retort that "there is no basis" for Defendants' position. Opposition, Doc. 20 at Page ID # 133. But their viewpoint does not diminish Defendants' affirmation that the challenged law cannot be used to prosecute political expression.

### 3. Plaintiffs incorrectly suggest that political-expression prosecutions are likely because the challenged law is "newly-enacted"

Contrary to Plaintiffs' suggestion, a prosecution for political expression is not likely to occur simply because the challenged law is "newly-enacted." Opposition, Doc. 20 at Page ID # 133. Once

9

again, the disputed language in the challenged law is not new. And, decades of Ohio court decisions narrowly construe that language so as not to reach political expression.

In addition, the decisions on which Plaintiffs rely are distinguishable because all of the statutes at issue in those cases targeted a specific class. Here, by dispositive contrast, people seeking to make the sort of political statements on which Plaintiffs predicate their claim of standing do not fall within the ambit of the challenged law. In *Doe*, a class of doctors who performed abortions challenged the constitutionality of a statute placing restrictions on abortions. *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). In *Gaertner*, chamber of commerce groups that spent money endorsing political candidates challenged a statute prohibiting corporate political spending. *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 485 (8th Cir.2006). In *Bartlett*, a political action committee challenged a statute targeting any entity with a "primary or incidental purpose of . . . influenc[ing] the result of an election." *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir.1999). And in *Gardner*, a political action committee challenged a cap on expenditures by political committees. *New Hampshire Right to Life PAC v. Gardner*, 99 F.3d 8, 24 (1st Cir.1996).

Plaintiffs incorrectly argue that *Virginia v. American Booksellers Ass'n*, 484 U.S. 383 (1988) is "squarely on point." Opposition, Doc. 20 at Page ID # 137. But that case is also unhelpful to Plaintiffs. There, an association of book stores challenged, pre-enforcement, a Virginia statute prohibiting "commercial" display of obscene and pornographic materials "in a manner whereby juveniles may examine and peruse" it. *American Booksellers* at 386. The law was "aimed directly at plaintiffs" and Virginia did "not suggest[] that the newly enacted law will not be enforced[.]" *Id.* at 392-93.

Unlike *Doe*, *Gartner*, *Bartlett*, *Gardner*, and *American Booksellers*, the challenged law does not specifically target Plaintiffs, and it does not reach the political speech on which Plaintiffs base their claim of standing.

**B.     Plaintiffs largely ignore their standing problem and instead assert, unpersuasively, a merits-based overbreadth argument**

Instead of trying to make a case for standing through a plausible, non-speculative threat of prosecution, Plaintiffs largely focus on the merits of their claim, arguing that the challenged law is overbroad. But they cannot skip their standing hurdle to make it go away. As the Sixth Circuit has held, "the overbreadth doctrine does not eviscerate the standing requirement, which is a *constitutional* mandate that is 'absolute' and 'irrevocable.'" *Fieger*, 553 F.3d at 961 (emphasis in original). Rather, "the Supreme Court has made clear that the injury in fact requirement still applies to overbreadth claims under the First Amendment." *Id.* at 961 (quotations and citations omitted). An overbreadth plaintiff still must establish an injury in fact that is (1) "concrete and particularized[,]" (2) "actual or imminent, not conjectural or hypothetical[,]" (3) "fairly traceable to the challenged action[,]" and (4) that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 962 (citations omitted). As already discussed, Plaintiffs have not met these requirements.

Regardless, even assuming standing could be set aside, Plaintiffs' various overbreadth arguments fail to establish a cognizable claim.

To have a cognizable overbreadth claim, Plaintiffs would need to establish that the challenged law is "substantially" overbroad in relation to the statute's plainly legitimate sweep. *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (a law that restricts "conduct and not merely speech" requires proof of substantial overbreadth). Said another way, Plaintiffs have the burden of "showing that the statute reaches a significant amount

11

of protected speech." *State v. Kinstle*, 3rd Dist. Allen No. 1-11-45, 2012-Ohio-5952, ¶ 21 (quotations and citations omitted). As discussed above, Ohio courts narrowly construe the challenged law. This "narrow[] construction . . . cur[es]" any potential overbreadth. *Thompson v. Gaffney*, 540 F.2d 251, 253 (6th Cir.1976).

Plaintiffs rely on only two Ohio decisions, *State v. Dart*, 2010-Ohio-5637 (2010) and *State v. Dennis*, 1997 Ohio App. LEXIS 5049 (1997), for their claim that the challenged law "restricts a vast range of speech." Opposition, Doc. 20 at Page ID # 122-23. Neither *Dart* nor *Dennis* dealt with political expression and neither involved a successful First Amendment challenge. Neither supports Plaintiffs' overbreadth claim.

Plaintiffs quote from one line of *Dart*. *Dart* was a sufficiency-of-the-evidence challenge to a conviction, not a First Amendment question about the constitutionality of Ohio's anti-harassment law. *Id.* at *6 ("Defendant next argues that his conviction for telecommunications harassment is against the manifest weight of the evidence."). The defendant was convicted under the law for making "repeated phone calls containing vulgar, sexually explicit language" late at night to a single female who lived alone. *Id.* at *10. The court stated that the defendant was drunk at the time of the calls and "express[ed] a desire to engage in sexual relations" with the female. *Id.*. Previously, the female had sued the defendant, the owner of a construction company, for allegedly failing to fix a water problem in her home. *Id.* at *1. Defendant, consequently, had been in the victim's home and the victim "testified that she perceived the calls as threatening." *Id.*. *Dart* did not discuss the various ways that Ohio has construed and limited the scope of the anti-harassment law, nor was the scope of the law at issue.

*Dennis* involved a conviction under a predecessor anti-harassment law that was written in terms of a "purpose to abuse, threaten, annoy, or harass the person called." *Dennis*, 1997 Ohio

App. LEXIS 5049 at *9. The conviction was based on the defendant's "purpose to annoy," *Id.* at *10, *a portion of the law that the General Assembly has since removed*. As in *Dart*, in *Dennis*, political expression was not at issue. Instead, the defendant called a political adversary a few days after his adversary's father had died and was buried and stated, "what goes around, comes around." *Id.* at *1.

Plaintiffs also rest their overbreadth argument on foreign-jurisdiction decisions that involved differently worded, more-expansive statutes from other States. *United States v. Popa*, 187 F.3d 672, 673-74 (D.C. Cir.1999) was an as-applied challenge to a federal statute that, among other things, prohibited "annoying" someone (a term Ohio removed from its anti-harassment law 18 years ago). *United States v. Cassidy*, 814 F.Supp.2d 574, 587-88 (D. Md. 2011), which involved alleged stalking, was also an as-applied challenge. There, a federal statute prohibited communications intended to cause "emotional distress." *Id*. at 580-81. The Massachusetts statute in *Commonwealth v. Bigelow*, 475 Mass. 554, 558-59, 59 N.E.3d 1105, 1110 (2016) also prohibited causing "emotional distress." Notably, the *Bigelow* court did not revisit a prior Massachusetts decision upholding the statute as intended to apply only to criminal harassment. *Id*. at 560 n.12, 13, 1110 n.12, 13. *State v. Smith*, 356 Wis.2d 329, 855 N.W.2d 493, 2014 Wisc. App. LEXIS 537, 2014 WL 2974157 (4th Dist. 2013) was a sufficiency-of-the-evidence challenge—not a constitutional challenge—for a conviction under a Wisconsin statute that prohibited, among other things, using a computer to "frighten" or "intimidate."

Plaintiffs' various hypotheticals about *different* statutes in States *other than Ohio* (Opposition, Doc. 20 at Page ID # 124-25) do not establish overbreadth and they are certainly not relevant for purposes of standing. *See Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir.2001) (holding that conjecture is insufficient to prove a significant possibility of future harm).

13

Even with a First Amendment claim, a plaintiff is "still required to show an injury in fact[.]" *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir.2007). Plaintiffs have not shown that there has ever been even a single prosecution *under Ohio's law* for a person's political expression—not against Plaintiffs nor against anyone else. Differently worded, more expansive statutes from other States, and conjecture, are inapposite to standing.

### C. Any question about the scope of the challenged law should be resolved in Ohio's favor under the canon of constitutional avoidance

Finally, if any lingering doubt remains about the scope of the challenged law, the Court should interpret the law in a manner that saves it from infirmities. Under the canon of constitutional avoidance, courts interpret statutes in a manner that avoids constitutional questions. *See Davet v. Cleveland*, 456 F.3d 549, 554-55 (6th Cir.2006). Under Ohio law as well, "[a] statute is entitled to a strong presumption of constitutionality." *State v. Rettig*, 3rd Dist. Henry Nos. 7-91-14, 7-91-15, 1992 Ohio App. LEXIS 516, *2-3. "It is also a well-settled principle of statutory construction that where constitutional questions are raised, courts will liberally construe a statute to save it from constitutional infirmities." *State v. Sinito*, 43 Ohio St.2d 98, 101, 330 N.E.2d 896 (1975).

That is, if the Court dismisses the Complaint and states that Plaintiffs do not have standing because, among other reasons, the challenged law cannot reach political expression, this will allay Plaintiffs' purported (and unfounded) fear of a hypothetical prosecution. That would also leave the law available to protect victims of criminal harassment.

### III. CONCLUSION

For all of the reasons set forth herein and in Defendants' Memorandum in Support of the Motion to Dismiss, Defendants respectfully ask the Court to dismiss Plaintiffs' Complaint.

Respectfully submitted,

MICHAEL DEWINE (0009181)
Ohio Attorney General

*s/ Steven T. Voigt*
STEVEN T. VOIGT (0092879)*
Principal Assistant Attorney General
   *Lead and Trial Counsel*
ZACHERY P. KELLER (0086930)
Associate Assistant Attorney General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872; Fax: (614) 728-7592
Steven.Voigt@OhioAttorneyGeneral.gov
Zachery.Keller@OhioAttorneyGeneral.gov

*Counsel for Defendant*
*Ohio Attorney General Mike DeWine*

*s/ Nick A. Soulas, Jr. [by email authorization]*
NICK A. SOULAS, JR. (0062166)
Office of the Prosecuting Attorney
Franklin County
373 South High Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-525-3520 | Fax: 614-525-6012
nasoulas@franklincountyohio.gov

*Counsel for Defendant Franklin County*
*Prosecutor Ron O'Brien*

*s/ Denise L. Smith [by email authorization]*
DENISE L. SMITH (0017811)
Office of the Prosecuting Attorney
Portage County
241 South Chestnut Street
Ravenna, OH 44266
Tel: 330-297-3850 | Fax: 330-297-4594
dsmith@portageco.com

*Counsel for Defendant Portage County*
*Prosecutor Victor Vigluicci*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2017, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. I further certify that a copy of the foregoing has been served by e-mail or facsimile upon all parties for whom counsel has not yet entered an appearance and upon all counsel who have not entered their appearance via the electronic system.

*s/Steven T. Voigt*
STEVEN T. VOIGT (0092879)
Principal Assistant Attorney General
