# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| PLUNDERBUND MEDIA L.L.C., et al., | ) | CASE NO. 5:17-cv-1027 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| OHIO ATTORNEY GENERAL MIKE | ) | MEMORANDUM OPINION |
| DEWINE, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on the motion of defendants Mike DeWine (in his official capacity as Ohio Attorney General), Victor Vigluicci (in his official capacity as the prosecuting attorney for Portage County, Ohio), and Ron O'Brien (in his official capacity as the prosecuting attorney for Franklin County, Ohio) (collectively "defendants") to dismiss the complaint of plaintiffs Plunderbund Media L.L.C. ("Plunderbund"), John Michael Spinelli ("Spinelli"), and the Portage County Tea Party, Inc. ("Tea Party") (collectively "plaintiffs"). (Doc. No. 19 ("Mot.").) Plaintiffs opposed the motion (Doc. No. 20 ("Opp'n")), and defendants filed a reply (Doc. No. 22 ("Reply")). For the reasons that follow, defendants' motion is granted.

## I. BACKGROUND

According to the complaint, plaintiffs publish and engage in "provocative" constitutionally protected speech "online" regarding local, state, and national politics. (Doc. No. 1 ("Compl.") ¶¶ 1, 4, 5, 6.) Plaintiffs allege that Ohio Rev. Code § 2917.21(B)(2) violates the First and Fourteenth Amendments to the United States Constitution because it criminalizes constitutionally protected political expression on the internet. (*Id.* ¶ 2.) Section 2917.21(B)(2) provides that:

> No person shall knowingly post a text or audio statement or an image on an internet web site or web page for the purpose of abusing, threatening, or harassing another person.

Plaintiffs allege that defendants are authorized to enforce the statute (Compl. ¶¶ 7, 8, 9), and they are at risk of criminal prosecution if police or prosecutors believe that plaintiffs' online political expression is abusive or harassing[1] because the statutory exemption for mainstream media[2] does not apply to plaintiffs (*id*. ¶¶ 14-19). Violation of § 2917.21(B) is a first degree misdemeanor for the first offense, and a fifth degree felony for each subsequent offense. *See* § 2917.21(C)(2); Compl. ¶ 20, citing 2917.21(C)(2).

In count one, plaintiffs allege that the statute restricts the content of speech and seek a declaration that § 2917.21(B)(2) is unconstitutionally overbroad. (Compl. ¶¶ 21-28.) In count two, plaintiffs claim that they have been chilled in the exercise of their right to engage in political speech under the First Amendment because of fear of prosecution and, unless § 2917.21(B)(2) is declared unconstitutional and its enforcement enjoined, plaintiffs will be irreparably harmed. (*Id*. ¶¶ 29-35.)

Plaintiffs also allege that Ohio Rev. Code § 2917.21(B)(1) is unconstitutional to the extent that it prohibits abusing and harassing speech about a person, rather than directed to a person (*id*. ¶ 3), and to the extent that (B)(1) prohibits online expression for the purpose of abuse or harassment

---

[1] Plaintiffs contest the constitutionality of the statute's prohibition against abuse and harassment, but do not contest the prohibition against threats. (Compl. ¶ 2.)

[2] Ohio Rev. Code § 2917.21, provides, in relevant part:

> (F) Divisions (A)(5) to (11) and (B)(2) of this section do not apply to a person who, while employed or contracted by a newspaper, magazine, press association, news agency, news wire service, cable channel or cable operator, or radio or television station, is gathering, processing, transmitting, compiling, editing, or disseminating information for the general public within the scope of the person's employment in that capacity or the person's contractual authority in that capacity.

(*id*. at ¶ 18). Plaintiffs do not assert any count with respect to § 2917.21(B)(1) but, in their prayer, seek the same relief as for § 2917.21(B)(2). (*See id*. at 8-9.[3])

On the same day that plaintiffs filed their complaint, they also filed a motion for a preliminary injunction. (Doc. No. 2.) The Court conducted a telephonic conference to discuss the motion, and the parties agreed that defendants' anticipated motion to dismiss should be resolved before the Court addressed the motion for injunctive relief. (*See* Minute Order and Order dated June 12, 2017.) The parties briefed defendants' motion to dismiss in accordance with the schedule established by the Court, and the motion is ripe for decision.

## II. DISCUSSION

### A. Fed. R. Civ. P. 12(b)(1)

Defendants bring their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.[4] Defendants contend that plaintiffs lack constitutional standing to bring this case because: (1) their allegations concerning prosecution under the statute are speculative, (2) Ohio courts have never interpreted the language in the statute to reach political speech or criticism of government officials, and (3) their subjectively chilled speech is insufficient to establish standing. (Mot. at 104.)

---

[3] All page number references are to the page identification numbers generated by the Court's electronic filing system.

[4] Defendants also move for dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Because plaintiffs lacks standing, the Court lacks subject matter jurisdiction over the case and, thus, does not address defendants' motion with respect to Rule 12(b)(6).

3

Article III standing is an issue of subject matter jurisdiction properly decided under 12(b)(1).[5] *Am. BioCare Inc. v. Howard & Howard Attorneys PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017) (citation omitted); *Beck v. FCA US LLC*, No. 17-cv-10267, --F.Supp.3d--, 2017 WL 3448016, at *4 (E.D. Mich. Aug. 11, 2017) (lack of standing is properly considered as a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)) (*citing Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008)). "When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction." *Glenn v. Holder*, 738 F. Supp. 2d 718, 724 (E.D. Mich. 2010); *Am. BioCare*, 702 F. App'x at 419 (citation omitted).

**B. Article III Standing**

Article III of the United States Constitution limits a federal court's exercise of authority to "cases" or "controversies." U.S. Const. art. III § 2 cl.1. The Supreme Court has enumerated the following familiar elements necessary to establishing standing:

> First, Plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[5]

> Challenges to subject-matter jurisdiction fall into two general categories: "facial attacks"—which argue that the pleading allegations are insufficient—and "factual attacks"—which challenge the factual veracity of the allegations. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). On a motion raising a facial attack, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id*. In reviewing a motion raising a factual attack, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*.

*Beck*, 2017 WL 3448016, at *4.

*Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

"These elements are commonly referred to as the 'injury-in-fact,' 'causation,' and 'redressability' requirements." *Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016) (quoting *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008)); *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (quoting *Lujan,* 504 U.S. at 560-61). Article III standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

"If a party does not have standing to bring an action, then the court has no authority to hear the matter and must dismiss the case." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) (citation omitted). "The party seeking to invoke federal jurisdiction bears the burden to demonstrate standing and he 'must plead its components with specificity.'" *Daubenmire v. City of Columbus*, 507 F.3d 383, 388 (6th Cir. 2007) (quoting *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 494 (6th Cir. 1999) (further citation omitted)); *see also Phillips*, 841 F.3d at 414 ("'a plaintiff must demonstrate standing for each claim he seeks to press'") (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008) (further citation omitted)). Plaintiffs' allegation that § 2917.21(B)(2) is overbroad does not excuse them from establishing Article III standing.[6]

---

[6] The relaxation of prudential standing requirements where unconstitutionally overbroad laws may chill protected speech does not apply to Article III standing requirements. *See Prime Media, Inc. v. City of Brentwood,* 485 F.3d 343, 349-50 (6th Cir. 2007) (citing *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93, 108 S. Ct. 636, 98 L. Ed. 2d 782 (1988)). "[E]ven plaintiffs seeking to assert an overbreadth challenge must first allege sufficient facts to establish a claim that they have suffered or are likely to suffer some injury as a result of the challenged statute." *Glenn*, 738 F. Supp. 2d at 727 (citing *Prime Media,* 485 F.3d at 353-354); *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009).

**C. Analysis**

> To establish standing for a free-speech claim, the Plaintiffs generally must show that "the rule, policy or law in question has explicitly prohibited or proscribed conduct on the[ir] part." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 711 (6th Cir. 2015) (citing *Clapper v. Amnesty Int'l USA*, [568 U.S. 398], 133 S. Ct. 1138, 1153, 185 L. Ed. 2d 264 (2013); *Nat'l Right to Life Political Action Comm'n v. Connor*, 323 F.3d 684 (8th Cir. 2003)). In the typical case, a statute must be enforced against the plaintiff before he may challenge its constitutionality, but pre-enforcement is available in some contexts if "threatened enforcement [is] sufficiently imminent"—that is, there is "a credible threat" that the provision will be enforced against the plaintiff. *Susan B. Anthony List v. Driehaus*, ––U.S. ––, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014).

*Phillips*, 841 F.3d at 415.

Where, as here, plaintiffs seek declaratory and injunctive relief, "a pre-enforcement challenge may be made before the actual completion of an injury-in-fact." *Glenn v. Holder*, 690 F.3d 417, 421 (6th Cir. 2012) (quoting *Grendell v. Ohio Supreme Court,* 252 F.3d 828, 832 (6th Cir. 2001)). But plaintiffs must nevertheless demonstrate constitutional standing. "[A] plaintiff satisfies the injury-in-fact requirement in the pre-enforcement context where [1] he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, *and* [2] there exists a credible threat of prosecution thereunder." *McKay*, 823 F.3d at 867 (internal quotation marks omitted) (emphasis added) (quoting *Susan B. Anthony List*, 134 S. Ct. at 2342 (further citation omitted)); *Glenn*, 690 F.3d at 421 (same) (citation omitted).

1. **No injury-in-fact**

   *Plaintiffs do not allege that that they intend to engage*
   *in the conduct proscribed by § 2917.21(B)(2)*

Plaintiffs seek a declaration that § 2917.21(B)(2) is overbroad and violates their constitutional right to engage in political speech. The language of § 2917.21(B)(2)—"No person shall knowingly post a text or audio statement or an image on an internet web site or web page for

6

the purpose of abusing, threatening, or harassing another person"—does not expressly prohibit or proscribe political expression. Nor does the statute prohibit or proscribe internet postings that condemn, criticize, ridicule, lampoon, or mock government officials and public figures. (*See* Compl. ¶¶ 5, 14, 15.) The statute only prohibits online expression "*for the purpose of* abusing . . . or harassing another."

Plaintiffs do not allege that they intend to engage in political expression online for the purpose of abusing or harassing government officials, public figures, or any person. In the absence of an allegation that plaintiffs intend to engage in conduct proscribed by the statute, their pre-enforcement complaint fails to present an injury-in-fact required for constitutional standing. *Glenn*, 738 F. Supp. at 721 (E.D. Mich. 2010) (pastors claiming that the Hate Crimes Act violates their first amendment right to oppose homosexual behavior lack standing because the pastors do not allege that they intended to engage in conduct proscribed by the statute—willfully causing or attempting to cause bodily injury to a person because of sexual orientation); *White v. United States*, No. 2:08-CV-118, 2009 WL 173509, at *3-4 (S.D. Ohio Jan. 26, 2009) (plaintiffs selling and shipping chickens for breeding and show purposes lack standing to assert a pre-enforcement challenge to the Animal Welfare Act because the facts alleged in the complaint do not indicate an intent to engage in activity (relating to cock fighting) that is prohibited by the law); *c.f. Kiser v. Reitz*, 765 F.3d 601, 608 (6th Cir. 2014) (dentist's complaint establishes injury-in-fact where he alleges an intention to advertise and perform *both* general dentistry *and* specialty endodontic services, which is arguably proscribed by dental board's regulations that a dentist may practice and advertise *either* as a generalist *or* as a specialist but, if a dentist seeks specialty recognition, his practice and advertising must be limited exclusively to that specialty).

### *Plaintiffs' fear of prosecution is speculative and conjectural*

Even though plaintiffs do not allege an intention to engage in online expression for the purpose of abuse and harassment, they nevertheless claim that they risk prosecution under the statute "should police or prosecutors believe" that their online expression was posted with the purpose of abuse or harassment, or "might be considered" to be harassing or abusive of the individuals that are the subject of their posts. (Compl. ¶¶ 15, 17; *see also* Doc. No. 2-3 (Declaration of Joseph Mismas ["Mismas Decl."]) ¶ 4 (prosecutors and law enforcement could interpret articles critical of them as intended to "mistreat" or "persistently annoy" them); Doc. No. 2-4 (Declaration of John Spinelli ["Spinelli Decl."]) ¶ 4 ("it's not a stretch to think that [Franklin County prosecutor Ron O'Brien] could use Ohio's new law to retaliate against [postings critical of him] in the future").)

While plaintiffs need not expose themselves to actual arrest or prosecution in order to establish an injury-in-fact necessary for standing, their fear of prosecution cannot be "imaginary or speculative." *Grendell*, 252 F.3d at 834 (quoting *Younger v. Harris,* 401 U.S. 37, 42, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)). To establish constitutional standing under Article III, at a minimum, an injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical[.]" *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 461 (6th Cir. 2007) (citing *Lujan,* 504 U.S. at 560). Imminent harm means "'certainly impending,' in contradistinction to 'allegations of possible future injury.'" *Parsons*, 801 F.3d at 710 (quoting *Clapper,* 568 U.S. at 409). Plaintiffs' fear that they might be prosecuted under the statute in the future if their intentions are misconstrued by police or prosecutors is too speculative to establish a threat of imminent injury required for constitutional standing. *White*, 2009 WL 173509, at *4 (plaintiffs' allegation that they might incur injury in the future if their intentions are misconstrued

8

rests on the occurrence of events that is too speculative and conjectural to present a threat of imminent injury) (citing *Cohn v. Brown,* 161 F. App'x 450, 455 (6th Cir. 2005)); *Grendell*, 252 F.3d at 833 (threat of future injury resting upon a speculative chain of events is too attenuated to establish injury-in-fact required for constitutional standing); *c.f. Steffel v. Thompson*, 415 U.S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974) (possible prosecution under panhandling statute is not imaginary or speculative where plaintiff had been warned twice to stop handbilling and his handbilling companion was prosecuted).

Plaintiffs have not alleged any facts that objectively support a reasonable fear that they will be prosecuted under the statute. Plaintiffs' speculative fear of prosecution is insufficient to establish a threat of imminent injury required for constitutional standing. *See Glenn*, 690 F.3d at 426-27.

### *Subjective chill is insufficient to establish injury*

Plaintiffs claim that their fear of prosecution under § 2917.21(B)(2) has subjectively chilled the content of their political expression. (*See* Compl. ¶¶ 16, 30; Doc. No. 2-2 (Declaration of Tom Zowistowski[7] ["Zowistowski Decl."]) ¶ 19; Mismas Decl. ¶ 3.) But, as plaintiffs concede (Opp'n at 134), "'[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *Parsons*, 801 F.3d at 711 (quoting *Laird v. Tatum,* 408 U.S. 1, 13-14, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972)). "To satisfy the injury in fact requirement on an allegation of chilled speech, the repercussions responsible for the chilling effect must be imminent." *Id*.; *McKay*, 823 F.3d at 868-69 ("without some other indication of imminent enforcement[,] [the Sixth C]ircuit has held that mere allegations of a subjective chill on

---

[7] Paragraphs 8 and 10 of Zowistowski's declaration incorrectly identifies the statute at issue as § 2917.21(C)(2).

protected speech are insufficient to establish an injury-in-fact for pre-enforcement standing purposes[]") (internal quotation marks omitted) (quoting *Berry v. Schmitt,* 688 F.3d 290, 296 (6th Cir. 2012)); *see also New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996) (Injury as a consequence of subjective chill hinges on the existence of a credible threat that the challenged law will be enforced. "A party's subjective fear that she may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable.") (citations omitted). As discussed above, plaintiffs have failed to establish an objectively reasonable fear of prosecution necessary to support an injury resulting from subjective chill.

But plaintiffs argue that, because § 2917.21(B)(2) is "newly enacted," their subjective chill is sufficient to establish an injury in a pre-enforcement context. (*See* Opp'n at 135 ("[A]s made clear by the Supreme Court's precedent in *American Booksellers* . . . a newly-enacted criminal prohibition on speech offers more than mere allegations of a subjective chill.").) Although § 2917.21(B)(2) was enacted in 2016 to expressly prohibit internet postings made for the purpose of abuse and harassment, Ohio's telecommunications harassment statute has prohibited telecommunications for the purpose of abuse or harassment for decades, and Ohio courts construed the statute to include internet postings even before the 2016 amendment.[8] Moreover, the Supreme Court in *American Booksellers* did not find that plaintiffs sustained an injury-in-fact simply because the statute was newly enacted or because of subjective chill, but because "the law [was] aimed directly at plaintiffs[.]" *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 384, 108 S. Ct. 636, 638, 98 L. Ed. 2d 782 (1988). Here, the law is not aimed at political expression or sharp

---

[8] The history of Ohio's telecommunications statute and pertinent case law is discussed later in this opinion.

10

criticism of government and public officials, and plaintiffs do not claim that they intend to post online for the purpose of abuse or harassment.

While allegations of subjective chill, alone, are insufficient, plaintiffs may nevertheless establish standing where they

> allege a subjective chill *and* point to some combination of the following factors: (1) a history of past enforcement against the plaintiffs or others, *see, e.g., Russell v. Lundergan–Grimes,* 784 F.3d 1037, 1049 (6th Cir. 2015); (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct, *see, e.g., Kiser v. Reitz,* 765 F.3d 601, 608-09 (6th Cir. 2014); *Berry,* 688 F.3d at 297; and/or (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action, *see Platt v. Bd. of Comm'rs on Grievances & Discipline of the Ohio Supreme Court,* 769 F.3d 447, 452 (6th Cir. 2014). *See also Susan B. Anthony List,* 134 S. Ct. at 2345 (finding "substantial" "threat of future enforcement" based on "history of past enforcement[,]" statutory provision "allow[ing] 'any person' with knowledge of the purported violation to file a complaint[,]" and evidence that enforcement proceedings were common).

*McKay*, 823 F.3d at 868-69 (emphasis in original).

Plaintiffs do not allege any of these factors. They do not point to a history of past enforcement against political expression—indeed, they concede that "no Ohio appellate decisions dealing with § 2917.21 have dealt with political speech." (Opp'n at 126.) Nor do plaintiffs claim that they have been warned or threatened with prosecution, or that there are reduced barriers to enforcement. Plaintiffs' subjective chill, alone, is insufficient to establish an injury-in-fact necessary for Article III standing.

### 2. No credible threat of prosecution

In addition to failing to establish a pre-enforcement injury-in-fact, plaintiffs also fail to establish the second element required for pre-enforcement standing—a credible threat of

prosecution. Assuming the allegations in the complaint and the declarations[9] submitted by plaintiffs in support of injunctive relief are true, neither those facts, nor the law, support plaintiffs' claim that they face a credible risk of prosecution.

### *No evidence that plaintiffs (or anyone else) have ever been warned, threatened or prosecuted under the statute for political expression*

As previously discussed, plaintiffs do not contend that they (or anyone else) have ever been warned, threatened, or prosecuted under § 2917.21(B) for political expression notwithstanding that Chapter 2917 has prohibited abuse and harassment since 1981.[10] In 1981, § 2917.21(B) provided that "No person shall make or cause to be made a telephone call . . . with the purpose to abuse, threaten, annoy, or harass another person." (*See* Reply, Ex. C.)

In 1999, "telecommunication" was substituted for "telephone call" and the word "annoy" was removed: "No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with the purpose to abuse, threaten, or harass another person." (*See id.*, Ex. D.) In 1999, the meaning of telecommunication and telecommunication device in § 2917.21(B) was the same as in § 2913.01 (*see* § 2917.21(E)(3)). Sections 2913.01(X) and (Y) defined those terms very broadly, and included computers and radio.

---

[9] The complaint seeks declaratory and injunctive relief with respect § 2917.21(B)(2). Plaintiffs filed a motion for preliminary injunction contemporaneously with the complaint, which attached declarations by plaintiffs in support of their request for injunctive relief. (*See* Doc. Nos. 2-2, 2-3, 2-4.) Both sides refer to plaintiffs' declarations in support of their arguments regarding defendants' motion to dismiss.

[10] An even earlier version of § 2917.21(B) prohibited making telephone calls for the purpose of harassment. (*See* Reply, Ex. B.)

In 2016, subsection (B)[11] was renumbered as § 2917.21(B)(1),[12] and section (B)(2) was added expressly prohibiting the posting of a text, audio statement, or image on an internet website or web page for the purpose of abuse or harassment. While subsection (B) has been amended over the years to reflect advances in technology—telephones, telecommunication devices, internet websites—the statutory prohibition against utilizing telecommunications for the purpose of abuse and harassment has remained unchanged.

Plaintiffs' declarations, taken collectively, aver that they have utilized telecommunication and telecommunications devices for more than a decade to engage in political expression. Notwithstanding such lengthy political activism, plaintiffs do not claim that they were ever warned or prosecuted under § 2917.21(B) because they expressed their political views for the purpose of abuse or harassment.

For example, Tom Zowistowski ("Zowistowski"), the executive director and founding member of the Tea Party, avers that "in the past" he and his organization published political opinions critical of government officials and public figures "through social media online" and on a radio show. (*See* Zowistowski Decl. ¶¶ 3, 4, 9.) The definition of a telecommunications device[13] under § 2917.21(B) has included "radio" since at least 2007, but Zowistowski does not indicate that he was ever warned, threatened, or prosecuted under § 2917.21(B) because of political

---

[11] Before the amendment in 2016, § 2917.21(B) provided that: "No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person." Since at least 2007, "telecommunication" has been broadly defined as "the origination, emission, dissemination, transmission, or reception of data, images, signals, sounds, or other intelligence or equivalence of intelligence of any nature over any communications system by any method, including, but not limited to, a fiber optic, electronic, magnetic, optical, digital, or analog method." *See* § 2917.21(G)(3), incorporating the definition from § 2913.01.

[12] "Telecommunication" and "telecommunications device" as used in the 2016 amendment retain the same meaning as in § 2913.01. *See* Section 2917.21(G)(3).

[13] *See* § 2913.01(Y).

expression on his radio show. Similarly, Zowistowski does not claim that the Tea Party's use of social media and online communication for political expression ever triggered a warning or threat of prosecution by authorities, even though Ohio courts applied § 2917.21(B) to social media and online communications long before § 2917.21(B)(2) was effective in 2016. *See State v. Ellison*, 900 N.E.2d 228, 229-30 (Ohio Ct. App. 2008) (posting on the social networking internet web site MySpace, where viewing of the site is open to the public, is a telecommunication within the meaning of § 2917.21(B)); *State v. Klingel*, 88 N.E.3d 455, 462-63 (Ohio Ct. App. 2017) (affirming 2015 conviction for telecommunications harassment under § 2917.21(B) for postings on Facebook page); *see also State v. Cline*, No. 07CA02, 2008 WL 1759091, at *1 (Ohio Ct. App. Apr. 16, 2008) (upholding conviction under § 2917.21(B) for, among other things, utilizing the internet for harassment); *State v. Dundics*, 62 N.E.3d 1013, 1014-15 (Ohio Ct. App. 2016) (affirming judgment of telecommunications harassment based upon on Facebook postings).

The owner and editor of plaintiff Plunderbund, Joseph Mismas, also submitted a declaration. He avers that Plunderbund operates a blog critical of the government and elected officials, and cites examples from as far back as 2013. (*See* Mismas Decl. ¶¶ 1, 5, 6, 7.) As discussed above, Ohio courts found that online postings for the purpose of abuse and harassment were prohibited by § 2017.21(B) *before* the statute was amended in 2016. Yet, Mismas does not claim that he (or Plunderbund) was ever warned, threatened, or prosecuted for Plunderbund's political blog postings.

Finally, plaintiff Spinelli avers that, since 2006, he has published "thousands" of articles on his blog that were highly critical of public officials and the government. (Spinelli Decl. ¶¶ 2-6.) As discussed above, Spinelli's blog posts were telecommunications under § 2917.21(B) even before the 2016 amendment. Yet, Spinelli does not claim that he has ever been warned, threatened

14

or prosecuted under § 2917.21(B) because the political expression on his blog was considered purposefully abusive or harassing under Ohio's telecommunications harassment statute.

Plaintiffs' declarations belie the claim that they face a credible threat of prosecution under § 2917.21(B)(2). They have never been warned or prosecuted under the telecommunications statute despite years of self-described sharp political expression online, notwithstanding that Ohio courts found social media and online internet communications to be a telecommunication under § 2917.21(B) well before the 2016 amendment. Moreover, no matter the nature of the telecommunications device, plaintiffs do not identify any cases where Ohio courts applied the telecommunications harassment statute to political expression.

### *Ohio courts construe § 2917.21(B) narrowly*

The manner in which Ohio courts have construed and applied Ohio's telecommunications statute before the 2016 amendment further undermines plaintiffs' claim that they face a credible threat of prosecution under § 2917.21(B)(2). First, the statute has been construed by Ohio courts to prohibit abusive and harassing conduct, not the content of a telecommunication. The purpose of § 2917.21(B) is to stop "criminal conduct, not the expression of offensive speech." *Ellison*, 900 N.E.2d at 230. "The statute operates to prohibit people from purposely making abusive, threatening, or harassing telecommunications; it does not restrict protected speech." *State v. Kronenberg*, No. 101403, 2015 WL 1255845, at *6 (Ohio Ct. App. Mar. 19, 2015) (citation omitted). *See also*, *State v. Stanley*, No. 06AP-65, 2006 WL 2575646, at *5 (Ohio Ct. App. Aug. 31, 2006) ("R.C. 2917.21(B) does not define 'abuse,' 'threaten,' or 'harass.' The fact that the statute does not place legal definitions on each of these terms demonstrates that the General Assembly intended to prohibit conduct that is easily definable by the common everyday meaning of these words."); *State v. Dennis*, No. 1-97-42, 1997 WL 691448, at *2 (Ohio Ct. App. Oct. 30,

1997) (Section 2917.21(B) is not unconstitutionally vague because the statute "establish[es] a standard of conduct prohibited through telephonic means. A person of ordinary intelligence has fair notice that they cannot make a telephone call with the purpose of being abusive . . . or harassing."); *City of Akron v. Hawthorne*, No. 13670, 1989 WL 10333, at *1 (Ohio Ct. App. Feb. 8, 1989) (Telecommunications statute is "not directed at the restriction of the communication of ideas, but [] at the regulation of specific conduct—the making of a telephone call with the purpose to harass, abuse, or annoy another."). The narrow application of the telecommunications harassment statute to conduct does not support plaintiffs' argument that they face a credible threat of prosecution based on the content of their political expression.

Moreover, Ohio's telecommunications harassment statute is a specific-intent crime. To violate the statute, a criminal defendant's specific purpose must be to abuse or harass; it is not sufficient that the defendant simply knew or should have known that his conduct would cause harassment. "The legislature has created th[e] substantial burden [of a specific-intent crime] to limit the statute's scope to criminal conduct, not the expression of offensive speech." *Ellison*, 900 N.E.2d at 230. The "critical inquiry" is "whether the purpose of the person who made the call was to abuse, threaten or harass the person called." *State v Kronenberg*, 2015 WL 1255845, at *2 (citation omitted). The test is not whether the recipient of the telecommunication feels abused or harassed. *State v. Bonifas,* 632 N.E.2d 531, 533 (Ohio Ct. App. 1993) ("[T]he gravamen of the offense of telephone harassment is not the fact that the recipient of the call is annoyed by the call. Rather, the offense must be proven in terms of the defendant's purpose to abuse, threaten, annoy, or harass the person called."); *State v. Davidson*, No. CA2009-05-014, 2009 WL 4895668, at *2 (Ohio Ct. App. Dec. 21, 2009). Telecommunication made for a legitimate purpose, not to abuse or harass, is not prohibited by the statute. *State v. Pleatman*, No. C-160234, 2016 WL 6635323, at *

3 (Ohio Ct. App. Nov. 9, 2016) (citing *Ellison,* 900 N.E.2d at 231 (no purpose to harass where defendant had the legitimate purpose of warning others about someone that she believed was a child molester)); *State v. Patel*, No. 03 BE 41, 2004 WL 614986, at *4 (Ohio Ct. App. Mar. 24, 2004) (purpose of message was not to harass even where message included profanity and name calling); *State v. Harshbarger*, No. 2-09-19, 2010 WL 3636239, at *5 (Ohio Ct. App. Sept. 20, 2010) (defendant did not make telephone call with the purpose to abuse, threaten or harass, but to resolve a dispute, even though the conversation quickly disintegrated into the making of threats). Considering Ohio's case law regarding telecommunications harassment, plaintiffs have not established that they face a credible threat of prosecution under § 2917.21(B)(2) for engaging in protected political expression online for a legitimate purpose, not abuse or harassment.

Finally, with respect to public internet posts, Ohio courts have required that the purportedly abusive and harassing message must be directed to an individual, not simply about an individual. *See Klingel*, 88 N.E.3d at 461 (message was directed to the subject where defendant posted a message on his Facebook page to "any law enforcement officer looking at my page," threatening them with death and soliciting others to "kill some cops"); *c.f. Ellison*, 900 N.E.2d at 231 (internet posting did not have purpose to harass where the posting could have served the legitimate purpose of warning others of the subject's rumored criminal behavior *and* the posting was public but not directed to the subject).

"Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state." *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (citation omitted). "'A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning.'" *Blackburn v. Oaktree Capital Mgmt., LLC*, 511 F.3d 633, 637 (6th Cir. 2008) (quoting *Powerex Corp. v. Reliant Energy*

17

*Servs., Inc.*, 551 U.S. 224, 232, 127 S. Ct. 2411, 168 L. Ed. 2d 112 (2007)); *Binno*, 826 F.3d at 346 ("If a term is used multiple times in the same statute, we presume that it has the same meaning wherever it is used in the statute.") (citing *Util. Air Regulatory Grp. v. E.P.A.*, ––U.S. ––––, 134 S. Ct. 2427, 2441, 189 L. Ed. 2d 372 (2014)). Plaintiffs have not advanced any argument to support a conclusion that § 2917.21(B)(2) (expressly prohibiting internet posts made for the purpose of abuse or harassment) will be construed and applied by Ohio courts any differently than the existing precedent regarding Ohio's telecommunications harassment statute.

Given the narrow construction of the telecommunications harassment statute by Ohio courts, the application of the statute to social media and internet communications before the 2016 amendment, existing precedent, and principles of statutory construction, plaintiffs fail to establish that they face a credible threat of prosecution under § 2917.21(B)(2) for online political expression not made for the purpose of abuse and harassment. Thus, the Court concludes that plaintiffs do not face a credible threat of prosecution under the § 2917.21(B)(2) for posting their political views on the internet.

## III. CONCLUSION

For all of the foregoing reasons, the Court finds that plaintiffs lack standing under Article III to assert their claims with respect to Ohio Rev. Code § 2917.21(B)(2).[14] In the absence of standing, the Court lacks subject matter jurisdiction over this case. Accordingly, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is granted. This case is dismissed and closed.

**IT IS SO ORDERED**.

Dated: February 28, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[14] To the extent that the complaint also asserts a claim with respect to Ohio Rev. Code § 2917.21(B)(1), the Court finds that plaintiffs lack standing for those claims, as well, for the same reasons they lack standing with respect to § 2917.21(B)(2).